Vander L. BEATTY and Samuel D. Wright, Plaintiffs,

v.

Amadeo ESPOSITO, as Chairman of the Executive Committee of the Democratic County Committee of Kings County, Howard Golden, as County Chairman of the Democratic County Committee of Kings County and the Board of Elections of the City of New York, Defendants.

No. 75 C 1828.

United States District Court, E. D. New York.

Nov. 9, 1977.

Harry R. Pollak, New York City, for plaintiffs.

Harold L. Fisher, Brooklyn, N. Y., for defendants Esposito & Golden.

W. Bernard Richland, Corp. Counsel by Robert Katz, Asst. Corp. Counsel, New York City, for defendant Bd. of Elections.

## MEMORANDUM AND ORDER

PLATT, District Judge.

Plaintiffs, Vander L. Beatty and Samuel D. Wright, moved this Court on June 10, 1977 for an order granting leave to serve and file a proposed amended complaint and convening a three judge constitutional court, and for a temporary injunction enjoining the defendants from continuing alleged practices as described below.

The facts of the instant controversy are summarized at pages 2–4 of this Court's previous Memorandum of March 25, 1976. In essence, plaintiffs have alleged in their original complaint and in their proposed amended complaint that defendant Golden's actions on October 22, 1975, in removing and replacing the Inspectors of Elections for the 53rd Assembly District without plaintiffs' prior approval or recommenda- tion so deviated from prior practice and procedure to the contrary in effect on November 1; 1968, as to constitute a substantial change in election practices within the meaning of 42 U.S.C. § 1973c.

This Court's Memorandum of March 26, 1976 * denied defendants' motion to dismiss for lack of subject matter jurisdiction, noting that (411 F.Supp. at p. 110):

"[t]he sole question to be determined in an action such as this brought by a private litigant is whether the alleged practice is subject to the provisions of the Voting Rights Act and therefore must be submitted for approval by the Attorney General before the same is enforced. That question is a question for a three-judge court to determine, not a single Federal judge. *Allen v. State Board of Elections*, 393 U.S. [544] at pp. 560–63 [89 S.Ct. 817 at pp. 828–31, 22 L.Ed.2d at pp. 13–16]."

Noting that plaintiffs had failed to file any formal papers moving for a preliminary or permanent injunction, this Court stated that (411 F.Supp. at p. 111):

"As soon as plaintiffs' additional motion papers are served and filed and discovery, if any, is completed, the Chief Judge of this Circuit will be asked to designate two other judges pursuant to 28 U.S.C. § 2284(1) to form a court for the determination of the afore indicated issues." [Plaintiffs' motion for preliminary or permanent injunction and defendants' motion to dismiss.]

While nearly 15 months intervened before plaintiffs formally moved the Court in accordance with the above suggestions, this delay has its justification. Shortly after this Court's opinion, an election was held in which plaintiff Beatty was defeated. This election was attacked in a State Court proceeding which was resolved against the plaintiffs. Claiming that the federal question purportedly raised by the pre-election replacement of the Election Inspectors was not considered by the state courts, plaintiffs have now returned with the instant motion to this Court.

* 411 F.Supp. 107 (E.D.N.Y.1976).

█ Since issuing its previous Memorandum and Order, this Court has discovered additional authority (not called to its attention by either of the parties herein), which leads us to reconsider our initial conclusions and enter an order herein dismissing plaintiffs' complaint. Specifically, in *Gangemi v. Sclafani*, 74 C 1269, Judge Weinstein, on September 4, 1974, dismissed a similar action seeking a temporary restraining order and a permanent injunction to restrain defendants from removing plaintiff's name from the ballot in an upcoming election. In rejecting the applicability of Section 1973c of the Voting Rights Act of 1965, Judge Weinstein noted (at p. 13):

"Nevertheless, this act has previously been interpreted by the Court of Appeals for this Circuit as being designed primarily to prevent racial discrimination. See *Powell v. Power*, 436 F.2d 94 [84] (2d Cir. 1970). *There is not the slightest hint of racial overtones in this case and it would be a futile exercise to require the extensive procedures of the 1965 Voting Rights Act to be followed.*" [Emphasis added.]

Similarly in this case, no allegation has been made of racial prejudice stemming from the alleged change in practice and procedures. This Court feels that such a good faith allegation is a minimal prerequisite to the maintenance of this action and the impanelling of a three-judge court. By this the Court is not saying that a party must prove racial bias as a predicate to the impanelling of a three-judge court or even as a predicate to appropriate injunctive relief from such a court for the cases are to the contrary, see *Allen v. St. Board of Elections*, 393 U.S. 544, 598–99, 89 S.Ct. 817, 22 L.Ed.2d 1 (1969). However, it is this Court's opinion that, inasmuch as the Voting Rights Act of 1965 is designed to prevent racial discrimination in state voting practices, see *Powell v. Power, supra*, and inasmuch as the procedure of impanelling a three-judge court under Section 1973c in accordance with the Supreme Court's deci-

sion in *Allen v. St. Board of Elections, supra*, is an extraordinary measure judicially designed to prevent subversion of the statutory purpose of the Voting Rights Act by non-compliance with Section 1973c, a minimal prerequisite to such an extraordinary measure is a good-faith allegation of racial discriminatory effect.

Significantly, the Court of Appeals, in affirming Judge Weinstein's decision in *Gangemi* noted

"We affirm substantially for the reasons given in the opinion below." *Gangemi v. Sclafani*, 506 F.2d 570 (2 Cir. 1974).

Thus not only did the Court implicitly approve Judge Weinstein's requirement of some allegation of racial discrimination but it also approved the dismissal of such a "coverage" question arising under Section 1973c and the *Allen* case *without the impanelling of a three-judge court. See also, Webber v. White*, 422 F.Supp. 416, 423–25 (N.D.Tex.1976).[1]

█ In addition, the Court of Appeals in *Gangemi* went beyond Judge Weinstein's decision to add (at 506 F.2d 570, 572) that:

"We have involved here no 'enactment' by a state or political subdivision of any election law. *Allen v. State Bd. of Elections.*"

In view of this endorsement of a requirement of an " 'enactment' . . . of any election law" this Court further decides the instant action should be dismissed for failure to allege such an "enactment" and thereby state a claim under Section 1973c. *See also, Webber v. White, supra*, at pp. 426–28. This Court does not consider the purported actions of one Chairman of a county political committee in one instance, ostensibly in accordance with his statutory discretion in such instances, to be sufficient to constitute an "enactment" as envisaged by the Court of Appeals in *Gangemi*.

For the reasons given above, this Court therefore denies plaintiffs' motion to con-

1. This Court recognizes that the result in *Webber* was specifically based on the new amendments to 28 U.S.C. § 2284, which are not applicable here. In view of the *Gangemi* case, how-

ever, this Court feels the result reached herein is within its authority and in keeping with the general policy arguments enunciated in *Webber*.

vene a three-judge constitutional court and dismisses plaintiffs' complaint for failure to state a claim upon which relief can be granted under 42 U.S.C. § 1973c.

SO ORDERED.