William E. ECCLES, Ronald G. King, Uriel Griffin, Louis Bowman, Allene Haynes, Shellie D. Anderson, Aljurita D. Smith, Ida M. Scott, Alice Baez, Vernelle B. Albury, Wilma E. Maynard, Sadie Banister, Albert Vann, Annette M. Robinson, on behalf of themselves and others similarly situated, Plaintiffs,

v.

Frank X. GARGIULO, James F. Bass, Robert S. Black, Hector Diaz, Matteo Lumetta, Joseph J. Previte, Martin Richards, Alice Sachs, Anthony Sadowski, and Salvatore Sclafani, Commissioners of Elections of the City of New York in their capacity as the Board of Elections in the City of New York, Defendants.

No. 80 C 2423.

United States District Court,
E. D. New York.

Sept. 8, 1980.

Memorandum Order On Reconsideration
Sept. 26, 1980.

420

Jeff L. Greenup, Fred L. Wallace, Percy L. Lambert, New York City, Esmeralda Simmons, Brooklyn, N. Y., for plaintiffs.

Allen G. Schwartz, Corp. Counsel of the City of New York, New York City by Patrick F. X. Mulhearn, Asst. Corp. Counsel, New York City, Robert Schmukler, Brooklyn, N. Y. (appearing by special leave of the Court), for defendants.

NEAHER, District Judge.

Plaintiffs in this action are candidates for public and Democratic Party offices, and persons representing the class of those who signed petitions on behalf of these candidates, whose names have been stricken by defendants from the ballots of the primary election scheduled to be held September 9, 1980, in the 56th Assembly District, Kings County. Defendants are the Commissioners of Election of the City of New York (hereinafter "Board of Elections"). Claiming a violation of the Voting Rights Act of 1965, 42 U.S.C. § 1973 *et seq.*, as amended (the Act), and a violation of their rights to due process and equal protection, plaintiffs seek an order directing that the stricken names be restored to the ballot or, in the alternative, an order enjoining the holding of the primary until a three–judge court may hear the merits of the action.

The Voting Rights Act, as applied to New York State by a determination of the United States Attorney General, 35 Fed.Reg. 12354, July 24, 1970, comes into play

"whenever [the] State or political subdivision ... shall enact or seek to administer any voting qualification or prerequisite to voting, or standard, practice, or procedure with respect to voting different to that in force or effect on November 1, 1968, ...." 42 U.S.C. § 1973c.

Under the Act, before the State or subdivision may deny anyone the right to vote for failure to comply with the post–1968 procedure, it must obtain from the United States District Court for the District of Columbia

"a declaratory judgment that such qualification, prerequisite, standard, practice, or procedure does not have the purpose and will not have the effect of denying or abridging the right to vote on account of race or color, ...." *Id.*

Alternatively, the new procedure may be enforced if it has been submitted to the Attorney General and he does not interpose an objection within sixty days. *Id.* Actions under § 1973c may be heard before a three–judge court in accordance with 28 U.S.C. § 2284. *Id.*

It is plaintiffs' basic claim that the actions of defendants voiding their petitions on the basis of fraud and removing the names of plaintiff candidates from the primary ballots constituted a change in election procedure since 1968 that has been approved by neither the District Court for the District of Columbia nor the Attorney General, in violation of 42 U.S.C. § 1973c. However, for the reasons which follow, the court is of opinion that it lacks jurisdiction to grant the relief plaintiffs seek and the complaint must consequently be dismissed.

Although severe time constraints imposed by the imminence of the primary have deprived the court of a fully developed record, the following facts are taken to be not seriously in dispute from the papers submitted and representations of counsel made at argument on the application for preliminary relief.

Plaintiff Albert Vann, a black citizen, is seeking to contest the nomination of the regular Democratic Party's choice for the office of Assemblyman representing the 56th Assembly District in the County of Kings as well as Male Member of the Democratic State Committee from that District. His co–plaintiffs, also black citizens, are seeking various party offices and support Mr. Vann in his effort. All plaintiffs claim to represent a class of over 3,000 registered voters who also support Mr. Vann and his co–plaintiffs for the offices they seek. Designating petitions were printed and circulated in behalf of the named plaintiffs and others and some 3,000 signatures were obtained in time for filing as required by law. The Board of Elections initially accepted them as in conformity with legal requirements.

Thereafter, a proceeding was brought in the Supreme Court, Kings County, by petitioners Amitah Fisher and Greer Peacock, also black citizens, acting on behalf of nominees opposed to plaintiffs and naming as defendants Albert Vann, Annette Robinson and others who are plaintiffs in this action. The State court petitioners asserted claims of fraud in the nominating petitions presented by these plaintiffs in that (1) persons named for party posts had not consented to the use of their names, and (2) the petitions bore dates of signing that antedated the dates when the blank petitions were printed.

The Supreme Court, following extensive testimony and examination of documents, found several of plaintiffs' petitions to be fraudulent based upon two independent types of impropriety. First, the court found taint in the appearance on the petitions of the names of persons who in fact had never consented to their being listed as candidates. This finding was in accordance with the view of the New York courts that presumes that voters are deceived by this device into believing that the non–consenting persons have purposefully lent their names and support to the other persons on the petition. *Application of Maisel*, 23 N.Y. S.2d 420 (Sup.Ct., Kings County, 1940); *Richardson v. Luizzo*, 64 A.D. 942, 408 N.Y.

S.2d 532 (App.Div.2d Dept.1978). The courts of New York have applied this rule in numerous instances both before and since the passage of the Act. See, e. g., Application of Maisel, supra; Richardson v. Luizzo, supra. See also Matter of Lufty v. Gangemi, 35 N.Y.2d 179, 359 N.Y.S.2d 273, 316 N.E.2d 710 (1974).

Secondly, the Supreme Court found many of plaintiffs' petitions to be fraudulent upon determining that numerous signatures had in fact been pre-dated. This practice has also been long considered by the New York courts to be a species of fraud. See, e. g., Collins v. Heffernan, 187 Misc. 165, 63 N.Y.S.2d 692 (Sup.Ct., N.Y.County, 1946).

Although the Supreme Court found fraud in the petitions for only some of the 59 election districts within the 56th Assembly District, since all of plaintiffs' petitions for the Assembly District had been bound together, as permitted by N.Y. Election Law § 6-134, the court apparently determined that the taint permeated the entire set of petitions for the Assembly District and ordered defendants to disqualify the whole "petition," thereby requiring the invalidation of plaintiffs' candidacies.

It is manifest that although defendant Board of Elections took the ministerial action of disqualifying plaintiff candidates, they acted upon an express direction of the New York Supreme Court following the hearing above-mentioned. Indeed, it appears that the Board of Elections has no authority to rule on a question of fraud (Mulhearn Aff., dated September 5, 1980, at 2-3); and it is not disputed that defendants in the first instance accepted the petitions at issue here.

■ Without commenting upon the wisdom or fairness of this result, it is clear that this was an action taken by the Supreme Court and merely carried out by defendants in obedience to judicial order. The consequent difficulty for plaintiffs is that in this Circuit, the State Supreme Court decree may not be considered a change in election procedures covered by the Act. Gangemi v. Sclafani, 506 F.2d 570 (2d Cir. 1974); Williams v. Sclafani, 444 F.Supp. 895, 904 (E.D.

N.Y.1977); see also Webber v. White, 422 F.Supp. 416 (N.D.Tex.1976). Both the language of 42 U.S.C. § 1973c and its legislative history indicate that it was intended to regulate suspect alterations in election procedures by legislative enactment or administrative action. Williams v. Sclafani, supra, 444 F.Supp. at 904. Since the actions complained of here, even if they could be viewed as a change in State procedure since 1968, are not susceptible of review under the Act, this court is without jurisdiction to grant relief.

■ In addition, the court notes that the Act clearly was intended to prevent the abridgment of "the right to vote on account of race or color," 42 U.S.C. § 1973c (emphasis supplied). Powell v. Power, 436 F.2d 84 (2d Cir. 1970). Thus, a good faith allegation of racially discriminatory intent or impact is required before the court can proceed to consider the relief plaintiffs seek. Beatty v. Esposito, 439 F.Supp. 830 (E.D.N.Y.1977). Although some or all of them are black, plaintiffs have made no such allegation and, indeed, it is uncontested that their opponents, at whose instance the Supreme Court issued its order, are also black.

The court cannot but feel sympathy for plaintiffs in this case. However, their complaint raises questions of purely State law to be determined by the State courts. Under the circumstances, the court must be guided by the reasoning of the Court of Appeals for this Circuit:

"Were we to embrace plaintiffs' theory, this court would henceforth be thrust into the details of virtually every election, tinkering with the state's election machinery, reviewing petitions, registration cards, vote tallies and certificates of election for all manner of error and insufficiency under state and federal law. Absent a clear and unambiguous mandate from Congress, we are not inclined to undertake such a wholesale expansion of our jurisdiction into an area which, with certain narrow and well defined exceptions, has been in the exclusive cognizance of the state courts." Powell v.

*Power, supra,* 436 F.2d at 86. (Footnote omitted.)

■ Accordingly, the complaint is dismissed for lack of jurisdiction.[1]

SO ORDERED.

## MEMORANDUM ORDER ON RECONSIDERATION

Plaintiffs, candidates for public and party offices in the 56th Assembly District, Kings County, and registered voters who support them, have moved for reconsideration of that portion of the court's order dated September 8, 1980, dismissing their claim based upon 42 U.S.C. § 1983 arising out of the invalidation of their designating petitions pursuant to an order of the New York State Supreme Court.[1] Plaintiffs also request an injunction barring defendant Commissioners of Elections of New York City from certifying the results of the September 9, 1980, primary election and from notifying the successful candidates of their nomination or election pending a decision on the motion for reconsideration. For the reasons stated below, the applications for injunctive relief and for reconsideration are denied.[2]

The New York State Supreme Court sustained objections to plaintiffs' designating petitions upon two grounds. One ground was based upon a finding that several persons listed upon the petitions as candidates had never consented to their names being so used. Apparently, plaintiffs seek to challenge as violative of their First and Fourteenth Amendment rights the line of New York cases that holds such a device to be fraud requiring invalidation of the tainted petitions *in toto.*

1. While the merits of a claim under the Act must be heard by a three–judge court, a single judge may dismiss for want of subject matter jurisdiction. See *Beatty v. Dinkins,* 478 F.Supp. 749 (S.D.N.Y.1979).

   The court's decision today makes it unnecessary to reach plaintiffs' claims of denial of due process and equal protection, which are premised upon defendants' failure to obtain the required approval of the alleged change in election procedures.

1. The Supreme Court decision, dated August 20, 1980, was affirmed without opinion by the

Defendants do not seriously contest the fundamental importance of the asserted right to participate in a primary election and a candidate's limited right of access to the ballot. *Williams v. Rhodes,* 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968); *Gray v. Sanders,* 372 U.S. 368, 83 S.Ct. 801, 9 L.Ed.2d 821 (1968); *U. S. v. Classic,* 313 U.S. 299, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941). The question then becomes whether, in the light of the claimed State interest served by defendants' actions, constitutionally impermissible restrictions have been imposed on plaintiffs' rights. *Kusper v. Pontikes,* 414 U.S. 51, 58–59, 94 S.Ct. 303, 308, 38 L.Ed.2d 260 (1973).

■ It is clear that the States have a substantial and compelling interest in the "preservation of the integrity of the electoral process," which includes preventing unfair practices and the confusion or deception of voters. *American Party of Texas v. White,* 415 U.S. 767, 782 & n.14, 94 S.Ct. 1296, 1307 & n.14, 39 L.Ed.2d 744 (1974); *Rosario v. Rockefeller,* 410 U.S. 752, 760–61, 93 S.Ct. 1245, 1251, 36 L.Ed.2d 1 (1973). To serve this interest, a State may require a candidate to demonstrate a significant modicum of support before placing the candidate's name on an election ballot. *Jenness v. Fortson,* 403 U.S. 431, 442, 91 S.Ct. 1970, 1976, 29 L.Ed.2d 554 (1971). In addition, requirements conditioning voter or candidate participation in primaries upon a showing of party loyalty have been upheld as proper to further the legitimate State interest in insuring that the primary process truly reflect the views of party members

Appellate Division, Second Department, and leave to appeal to the Court of Appeals was denied. A fuller statement of the facts before the court is contained in the court's memorandum and order of September 8, 1980.

2. For purposes of this decision, the court need not pass on other issues presented by plaintiffs' failure to join the successful candidates, whose certifications they seek to enjoin, and the State Attorney General in this action challenging aspects of the New York Election Law.

and thereby avoiding primary outcomes which will mislead the general electorate to the extent it relies on party labels as representative of certain interests or ideologies. See *Rosario v. Rockefeller, supra; Ray v. Blair*, 343 U.S. 214, 72 S.Ct. 654, 96 L.Ed. 894 (1952); *Nader v. Schaffer*, 417 F.Supp. 837, 845 (D.Conn.), *aff'd*, 429 U.S. 989, 97 S.Ct. 516, 50 L.Ed.2d 602 (1976). Finally, if a minimum requirement of support is itself valid, then removal from the ballot of a candidate who fails to demonstrate the minimum measure of *valid* support is a sanction that the State may properly apply. *Bowe v. Board of Election Commissioners*, 614 F.2d 1147, 1151 & n.7 (7th Cir. 1980).

The New York Supreme Court is empowered by N.Y. Election Law § 16–102 to order the invalidation of designating petitions following objections made on the basis of fraud or other impropriety. Pursuant to this statutory obligation, the consent rule that resulted in the invalidation of plaintiffs' candidacies has been applied over many years by the New York courts to prevent petitions that are fraudulent insofar as they suggest to potential signatories that the various candidates listed together in fact intend to support each other. See *Richardson v. Luizzo*, 64 A.D. 942, 408 N.Y. S.2d 532 (App.Div.2d Dept.), *aff'd*, 45 N.Y.2d 789, 409 N.Y.S.2d 9, 381 N.E.2d 182 (1978); *Application of Maisel*, 23 N.Y.S.2d 420 (Sup.Ct. Kings Co. 1940), *appeal dismissed*, 287 N.Y. 619, 39 N.E.2d 263 (1941).

■ Viewing this case in the context of situations where federal intervention in a State's electoral processes was deemed necessary, it is plain that the invalidation plaintiffs complain of was not the result of their reasonable reliance on the erroneous advice of election officials. *Cf. Williams v. Sclafani*, 444 F.Supp. 906 (S.D.N.Y.), *aff'd*, 580 F.2d 1046 (2d Cir. 1978). Nor can it be said that the invalidation was due to a recently changed and inadequately publi-

cized technical requirement. *Cf. Briscoe v. Kusper*, 435 F.2d 1046 (7th Cir. 1970). In the light of the age of the consent rule, it also cannot be said that plaintiffs were unreasonably required to anticipate a State court ruling, *cf. Griffin v. Burns*, 570 F.2d 1065 (1st Cir. 1978); nor, in the court's view, is this a case of denial of access to the ballot caused by inflexible and burdensome statutory requirements. *Cf. Illinois State Board of Elections v. Socialist Workers Party*, 440 U.S. 173, 99 S.Ct. 983, 59 L.Ed.2d 230 (1979). In light of the authority cited above, and viewing the rationale of the consent rule to be plainly sensible, the court is unable to say that this State rule of long standing is so arbitrary or discriminatory as to be an impermissible means toward furthering the State's compelling interest.

■ Regarding the consent rule's application in plaintiff's case, the court notes that the State Supreme Court did not merely infer wholesale fraud from the established fact of the non–consent of purported candidates. Rather, that Court heard unrebutted testimony from registered voters who declared that they would never have signed the contested petitions had they known that the consent of the purported candidates appearing on the petitions had not been given. As indicated earlier, the Supreme Court found two types of fraud, the second based upon a showing that many of plaintiffs' petitions bore dates of signing that antedated the proven dates when the blank petitions were printed.[3] See *Collins v. Heffernan*, 187 Misc. 165, 63 N.Y.S.2d 692 (Sup.Ct., N.Y. County, 1946).

■ It is apparent that on the basis of the evidence before it the Supreme Court found a pattern of misrepresentation in the obtaining of signatures and determined that fraud so permeated plaintiffs' petitions as to require their invalidation. See *Proskin v. May*, 40 N.Y.2d 829, 387 N.Y.S.2d 564, 355 N.E.2d 793 (1976); *Mercorella v. Benza*, 37 N.Y.2d 792, 375 N.Y.S.2d 105, 337 N.E.2d

---

**3.** This irregularity was apparently unexplained in the State Supreme Court, and plaintiffs here do not seriously challenge this other ground for invalidation. The court notes that if a candidate is barred from a ballot by one constitutionally valid provision or ruling, he generally

cannot challenge the invalidation on other grounds. See *Storer v. Brown*, 415 U.S. 724, 736–37, 94 S.Ct. 1274, 1282, 39 L.Ed.2d 714 (1974); *Clark v. Rose*, 531 F.2d 56 (2d Cir. 1976).

611 (1975). Since this court would seriously question the advisability of requiring the State to take the testimony of each person signing a petition challenged for fraud, *cf. Nader v. Schaffer, supra,* 417 F.Supp. at 847, we cannot say that "the entire election process–including as part thereof the state's administrative and judicial corrective process–" reaches the point of "patent and fundamental unfairness." *Griffin v. Burns, supra,* 570 F.2d at 1078, 1077. The court is again unable to conclude that this State ruling has violated plaintiffs' constitutional rights.

Finally, since plaintiffs have failed to allege that the invalidation of their petitions was the result of any racial or other unlawful animus, any uneven or erroneous application of this otherwise valid State rule presents no more than a question of State law not cognizable before this court. *Powell v. Power,* 436 F.2d 84, 88 (2d Cir. 1970).

Accordingly, plaintiffs' applications for injunctive relief and for reconsideration are denied.

SO ORDERED.