Jessie PENDLETON, Bill Amos, Citizens for Better Government, and Crystal Springs Branch of N.A.A.C.P., Individually, and on Behalf of All Others Similarly Situated

v.

Tommy HEARD, Tony Smith, Sidney Thompson, Manuel Welch, and Ted Berry, Members of the Copiah County Board of Supervisors, Individually and in Their Official Capacities; and the Copiah County, Ms. Board of Supervisors.

(Danny Cupit, State Bond Attorney and Edwin Lloyd Pittman, Attorney General, per Amended Complaint).

Civ. A. No. J86–0486(B).

United States District Court,
S.D. Mississippi,
Jackson Division.

Aug. 27, 1986.

Carroll Rhodes, James D. Shannon, Hazlehurst, Miss., for plaintiffs.

James W. Henley, Hazlehurst, Miss., Stephen Kirchmayr, Jr., Office of Atty. Gen., Jackson, Miss., for defendants.

## MEMORANDUM OPINION AND ORDER

BARBOUR, District Judge.

This cause came before the Court on Defendants' Motion to Dismiss for Lack of Jurisdiction. The basis of this Motion is whether the Tax Injunction Act of 1937, 28 U.S.C. § 1341 (1976), bars federal jurisdiction of a voting rights suit which challenged the validity and enforcement of a state bond statute. Although the Plaintiffs brought suit under Section 5 of the Voting Rights Act of 1965, 42 U.S.C. § 1973c (1981), this Court finds that the Tax Injunction Act, as well as the principles of comity and federalism, is applicable and the Court may not grant the requested injunctive relief for the Plaintiffs because there is a plain, speedy and efficient remedy in the courts of the state. While the merits of a claim under Section 1973c are usually heard by a three-judge court, a single judge may dismiss the action for want of subject matter jurisdiction. *Eccles v. Gargiulo*, 497 F.Supp. 419, 423 n. 1 (E.D.N.Y.1980).

### I.

Plaintiffs Jessie Pendleton and the Crystal Springs Branch of the NAACP represent registered voters in Copiah County, Mississippi, and bring this suit to enjoin the enforcement of certain alleged changes in voting which had not been precleared pursuant to Section 5 of the Voting Rights Act, 42 U.S.C. § 1973c (1981). The alleged changes in voting concern *Miss.Code Ann.* § 19–9–11 (1972) and the practices and procedures adopted by the Copiah County Board of Supervisors (hereinafter "Board") in regard to notices of intent to issue county road and bridge bonds pursuant to this statute. The Plaintiffs have sought an injunction against the State and the Board from proceeding under this statute to obtain a bond issue. Section 19–9–11, *Miss. Code Ann.* of 1972, as amended, provides a procedure for the issuance of bonds which basically requires a board of supervisors to adopt a resolution declaring its intention to issue the bonds and then to publish a notice of such intention in the local newspaper. If no petition is filed, the board then issues the bonds subject to a validation procedure before a state court. *Miss.Code Ann.* § 31–13–5 (1972). However, if 20% or 1500 of the qualified electors of the county, whichever is less, file a petition, then a referendum election shall be called, and the board cannot issue the bonds unless 60% of the voters approve the action of the board. *Miss.Code Ann.* § 19–9–11 (1972). Prior to the amendment of this statute in 1971, the 20% requirement was the sole provision for forcing a referendum; in 1971 the Mississippi legislature amended Section 19–9–11 by adding the 1500 provision.

In April, 1984, the Copiah County Board of Supervisors published a notice of its intent to issue bonds of the county in the amount of $750,000 for road and bridge construction and maintenance. Following publication, Plaintiffs promptly filed a petition containing over 1500, but less than 20%, of the qualified voters' signatures opposing the bond issue. The Board did not schedule a referendum and did not issue the bonds; but, on April 26, 1984, the Board adopted another resolution expressing its intent to issue $760,000 of road and bridge bonds. Following publication, again more than 1500 but less than 20% of the qualified voters signed a petition calling for a referendum. No referendum was scheduled. In all, between April, 1984, and April, 1986, the Board adopted seven resolutions calling for the issuance of road and bridge bonds. On each occasion more than 1500 but less than 20% of the electors signed a petition. On none of such occasions was a referendum scheduled. On June 18, 1986, the Board adopted a resolution of intent to issue bonds in the amount of $150,000 for each of the five supervisor's districts pursuant to *Miss.Code Ann.* § 19–9–11. No petition was filed opposing the issuance of any of the five district-wide bonds, and the time for such petition has expired.

Plaintiffs, individual electors of Copiah County and an alleged class of black electors of Copiah County, have filed this suit primarily asserting violations of Sec-

tion 5 of the Voting Rights Act and seeking an injunction prohibiting the issuance of the bonds called for in the June 18, 1986, resolution. Plaintiffs assert that the 1971 amendment to *Miss. Code Ann.* § 19-9-11 which added the 1500 signature provision was not precleared under the provisions of the Voting Rights Act. The failure to call referendum elections is urged as a change in a voting procedure which requires preclearance. Plaintiffs additionally contend that the adoption of the June 18, 1986, district-by-district bond issue resolution by the Board constituted a change in a voting practice or procedure which required preclearance before it could be implemented.

The Defendants assert that the Board of Supervisors has abandoned the issuance of any bonds other than those called for by the June 18, 1986, resolution. The Defendants assert in the motion presented to this Court that, although the Plaintiffs are seeking redress under Section 5 of the Voting Rights Act of 1965, 42 U.S.C. § 1973c (1981), the effect of enjoining the issuance of any county bonds is to enjoin the assessment and collection of county ad valorem taxes. Thus, Defendants contend that the Tax Injunction Act of 1937, 28 U.S.C. § 1341 (1976)[1], bars the Court from granting the relief requested by Plaintiffs.

II.

The Plaintiffs urge this Court to retain jurisdiction of this matter on the basis that federal courts have exclusive jurisdiction to hear a Section 5 claim. This argument is premised on 42 U.S.C. § 1973j(f) (1981),[2] which provides that actions for voting rights violations may be brought in district courts. Although Section 1973j(f) provides that district courts have jurisdiction, it does not mandate that federal district courts have *exclusive* jurisdiction of voting rights matters. There is no apparent legislative history bearing upon state court jurisdiction to decide issues arising under the Voting Rights Act. *Hathorn v. Lovorn,* 457 U.S. 255, 268 n. 22, 102 S.Ct. 2421, 2429 n. 22, 72 L.Ed.2d 824 (1981). The United States Supreme Court in *Gulf Offshore Company v. Mobil Oil Corporation,* 453 U.S. 473, 477-78, 101 S.Ct. 2870, 2874-75, 69 L.Ed.2d 784 (1981), held that where there is no explicit statutory directive mandating exclusive federal jurisdiction nor an unmistakable implication from legislative history or a clear incompatibility between state court jurisdiction and federal interest, there is a presumption that state courts enjoy concurrent jurisdiction over federal claims.

The Supreme Court specifically addressed the relationship between Sections 5 and 12(f) of the Voting Rights Act [42 U.S.C. § 1973c and § 1973j(f) ] in *Hathorn v. Lovorn,* 457 U.S. 255, 102 S.Ct. 2421, 72 L.Ed.2d 824 (1981). As the Court stated, it is possible that these sections grant the federal courts exclusive jurisdiction over "actions under" Section 5 or "proceedings instituted pursuant" to Section 12. *Hathorn,* 457 U.S. at 267-68, 102 S.Ct. at 2429. However, the Court did not resolve that question because the respondents' suit did not fall within the categories of those sections; the action was to compel compliance with a "forgotten state law." *Id.* at 268, 102 S.Ct. at 2429. Yet the Court did further state that nothing in Section 5 nor Section 12 negates the presumption that, at least when the issue arises collaterally, state courts may decide whether a proposed change in election requires preclearance under Section 5. *Hathorn,* 457 U.S. at 268, 102 S.Ct. at 2429. The Court em-

---

**1.** This Section provides: The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State. 28 U.S.C. § 1341 (1976).

**2.** The enforcement provision of Section 1973j(f) states:

The district courts of the United States shall have jurisdiction of proceedings instituted pursuant to this section and shall exercise the same without regard to whether a person asserting rights under the provisions ... of this chapter shall have exhausted any administrative or other remedies that may be provided by law.
42 U.S.C. § 1973j(f) (1981).

phasized, "Most important for our purposes, even a finding of exclusive federal jurisdiction over claims arising under a federal statute usually 'will not prevent a state court from deciding a federal question collaterally.'" *Id.* at 266, 102 S.Ct. at 2428; *Gulf Offshore*, 453 U.S. at 483 n. 12, 101 S.Ct. at 2878 n. 12.

This Court has considered that disputes arising under Section 5 of the Voting Rights Act normally are heard by a three-judge district court and is concerned whether similar protective measures are found in state court. In *Allen v. State Board of Elections*, 393 U.S. 544, 563, 89 S.Ct. 817, 830, 22 L.Ed.2d 1 (1969), the United States Supreme Court stated, "We conclude that in light of the extraordinary nature of the Act in general, and the unique approval requirement of § 5, Congress intended that disputes involving the coverage of § 5 be determined by a district court of three judges." Although this Court can find no similar protective measures in state court, this Court recognizes that the Supreme Court was aware of the federal statute providing for the convening of a three-judge district court and was cognizant of *Allen* when it rendered *Hathorn*, which applies specifically to Section 5 claims being brought collaterally in state court proceedings. The *Hathorn* Court clearly held that "Mississippi courts had the power to decide whether Section 5 applied to the change sought by respondents." 457 U.S. at 269, 102 S.Ct. at 2430; "For a state remedy to be 'adequate' under [Section 1341] it need not necessarily be 'the best available or even equal to or better than the remedy which might be available in the federal courts.'" *Mandel v. Hutchison*, 494 F.2d 364, 367 (9th Cir.1974). This Court notes that in this motion it is not determining whether there is Section 5 coverage; it is merely determining whether or not subject matter jurisdiction exists.

Accordingly, this Court concludes that federal district courts do not have exclusive jurisdiction of Section 5 claims, and that state courts have concurrent jurisdiction and may hear a claim pursuant to Section 5 of the Voting Rights Act. Plaintiffs have the opportunity to assert their Section 5 claim collaterally to any bond validation proceedings as explained below in Part IV.

### III(A).

■ The next question addressed to this Court is whether Section 1341 applies to this suit. For 28 U.S.C. § 1341 to be applicable, a "tax under State law" must be involved. *See* 28 U.S.C. § 1341, *supra* note 1. The meaning of the term "tax under State law" as used in Section 1341 is determined as a matter of federal law by reference to congressional policies underlying the Tax Injunction Act, rather than by adoption of state tax labels. *Robinson Protective Alarm Company v. City of Philadelphia*, 581 F.2d 371, 374 (3d Cir. 1978). The policy underlying the Act was to avoid interference with the administration of a state taxation scheme.

As the Court of Appeals for the Fifth Circuit has cogently explained in *United Gas Pipe Line Co. v. Whitman*, 595 F.2d 323 (5th Cir.1979):

The concept that Section 1341 is not a narrow statute aimed only at injunctive interference with tax collection, but is rather a broad restriction on federal jurisdiction in suits that impede state tax administration, has continued to gain credence in the federal courts. The Supreme Court recently stated that "[t]he statute has its roots in equity practice, in principles of federalism, and in recognition of the imperative need of a State to administer its own fiscal operations." *Tully v. Griffin, Inc., ...*, 429 U.S. [68, 73, 97 S.Ct. 219, 222, 50 L.Ed.2d 227 (1976) ]. ... In short, the history of Section 1341, from its precursor federal equity practice to its most current judicial construction, evidences that it is meant to be a broad jurisdictional impediment to federal court interference with the administration of state tax systems.

*Id.* at 326.

This Court finds that a bond is inextricably a part of the taxation scheme of a state. Although it is merely a label, the

Court notes that the very chapter under which the bond statute herein involved is listed is entitled "Finance and Taxation." Further, *Miss.Code Ann.* § 19–9–9 and § 19–9–91 (1972) provide that payment of bonds shall be made by levying a tax on all taxable property within the county. The United States Supreme Court recognized that

> [W]hen authority is granted by the legislative branch of the government to a municipality, or subdivision of a State, to contract an extraordinary debt by the issue of negotiable securities, the power to levy taxes sufficient to meet, at maturity, the obligation to be incurred, is conclusively implied, .... The power to tax is necessarily an ingredient of such a power to contract; as, ordinarily, political bodies can only meet their pecuniary obligations through the instrumentality of taxation.

*County Court of Scotland County v. United States,* 140 U.S. 41, 46, 11 S.Ct. 697, 698, 35 L.Ed. 351 (1891). The Mississippi Supreme Court in *Love v. Mayor of Yazoo City,* 162 Miss. 65, 138 So. 600, 601 (1932), provided that road bonds, if issued, would be a lien, charge and tax upon all the taxable property of the city. It is evident from the foregoing authority that a bond is an integral part of the state taxing process and a means by which the state or subdivision thereof may raise revenues.

■ Plaintiffs urge this Court that they are not seeking to enjoin collection of taxes because no tax may be imposed unless a bond is actually issued. Yet, even a proposed bond issue at this stage falls within the taxation scheme of the state because the steps and procedures are necessary before an assessment and levy can be made. Section 1341 is not aimed only at tax collection, for it is a broad restriction on federal jurisdiction in suits that *"impede state tax administration."* United Gas Pipe Line, 595 F.2d at 326 (emphasis added). Therefore, this Court finds that 28 U.S.C. § 1341 is applicable. Although Plaintiffs pursue their claim under Section 5 of the Voting Rights Act, the requested relief of an injunction against the enforcement and im-

plementation of the bond statute has the effect of restraining or impeding the administration of the state tax system. Generally federal courts are not to interfere with state mechanisms for resolving tax controversies. *Strescon Industries, Inc. v. Cohen,* 664 F.2d 929, 931 (4th Cir.1981). The court in *Long v. Kistler,* 524 F.Supp. 225, 226–27 (E.D.Pa.1981), stated:

> The operation of this statute [28 U.S.C. § 1341] cannot be voided by including a claim under Section 1983 or a federal constitutional violation, or by requesting declaratory relief rather than injunctive relief, *or by attacking the administration or implementation of the scheme rather than the tax itself.*

*Id.* at 226–27 (emphasis added). Because the relief requested by the Plaintiffs in this action would interfere with the administration of the state fiscal operations and taxation scheme, this Court finds that 28 U.S.C. § 1341 is applicable as a bar to the exercise of its jurisdiction.

■ Even if this Court were to find that the letter of the Tax Injunction Act did not apply in this situation, the principles of comity and federalism underlying the Act "militate in favor of a stringent standard of justiciability in cases that threaten to interfere with state taxes." *Alcan Aluminum Ltd. v. Department of Revenue,* 724 F.2d 1294, 1298 (7th Cir.1984). Federal courts have been reluctant to interfere with a state's system of raising revenues. *Id.* at 1297. Concerns of comity should motivate a federal court to restrain from interfering in issues of internal administration and implementation of a state taxing scheme. *See Fair Assessment in Real Estate Association v. McNary,* 454 U.S. 100, 109–13, 102 S.Ct. 177, 182–84, 70 L.Ed.2d 271 (1981) (principles of comity and federalism precluded exercise of jurisdiction by federal court in area of state taxation); *Tully v. Griffin,* 429 U.S. 68, 73, 97 S.Ct. 219, 222, 50 L.Ed.2d 227 (1976) (same); *Great Lakes Dredge & Dock Co. v. Huffman,* 319 U.S. 293, 297–98, 63 S.Ct. 1070, 1072–73, 87 L.Ed. 1407 (1943) (same).

### III(B).

A further argument of the Plaintiffs is that even if the Court construes the state bond statute as a taxing statute, this Court should recognize an exception to the Tax Injunction Act for actions brought under Section 5 of the Voting Rights Act of 1965. This Court finds that there is not an "exceptional case" exception to Section 1341 for purposes of a Section 5 claim. In *A Bonding Co. v. Sunnuck*, 629 F.2d 1127, 1132 (5th Cir.1980), the Fifth Circuit held:

> In sum, we find no precedent in the Supreme Court jurisprudence for the "exceptional case" rule the district court applied in this case. Nor have we uncovered any case in which the Supreme Court has examined the language of section 1341 or its legislative history for the announced purpose of determining whether its bar to jurisdiction is to be lifted in a case presenting "exceptional" circumstances. We find nothing in the wording of the state or in the legislative history that would support the district court's interpretation of section 1341 in this case. The statute is direct and clear in its mandate that Plaintiffs seeking to enjoin enforcement of state taxes seek their remedies in state courts, when state courts provide appropriate remedies.

*Id.*

The Plaintiffs contend the United States Supreme Court has recognized an exception to Section 1341 in *Moe v. Confederated Salish and Kootenai Tribes of Flathead Reservation*, 425 U.S. 463, 96 S.Ct. 1634, 48 L.Ed.2d 96 (1976). In *Moe* the Supreme Court reiterated that the United States is not barred by Section 1341 from seeking to enjoin the enforcement of a state tax law. *Moe*, 425 U.S. at 470, 96 S.Ct. at 1639; *Department of Employment v. United States*, 385 U.S. 355, 358, 87 S.Ct. 464, 466, 17 L.Ed.2d 414 (1966). *See also Comenout v. Washington*, 722 F.2d 574, 577 (9th Cir. 1983). The Court held that Indian tribes

suing under the jurisdictional statute of 28 U.S.C. § 1362 (1976)[3] would have the same access to federal courts as would the United States. *Moe*, 425 U.S. at 472–73, 96 S.Ct. at 1640–41. The Plaintiffs urge that as Section 1362 grants the United States and Indian tribes power to bring a suit against a state tax which would not be barred by Section 1341, Sections 1973c and 1973j(f) authorize the United States to bring actions to enforce the Voting Rights Act of 1965. Plaintiffs further state that an individual citizen has the same right to seek injunctive relief under the enforcement provisions of the Voting Rights Act as does the United States. *See Allen v. Board of Elections*, 393 U.S. 544, 557, 89 S.Ct. 817, 827, 22 L.Ed.2d 1 (1969). Plaintiffs thus analogize that as the United States is not barred by Section 1341 from bringing a suit to enjoin a state tax, so, too, a private plaintiff proceeding pursuant to Section 5 of the Voting Rights Act, 42 U.S.C. § 1973c, should not be barred by the Tax Injunction Act, 28 U.S.C. § 1341.

The differences between Section 1342 and Section 1973c, however, must be noted by this Court. The holding in *Moe* can be found to be based on a lack of state power to tax Indian tribes because of federal supremacy. This limitation on state jurisdiction is evident in the legislative history of Section 1362. "[S]tate taxing jurisdiction has been pre-empted by the applicable treaties and federal legislation." *Moe*, 425 U.S. at 474 n. 13, 96 S.Ct. at 1641 n. 13. There was a direct conflict between federal supremacy in Indian affairs and state taxing laws. The exception granted by Section 1362 was necessary because of the inherent limits of state taxing authority with regard to Indian tribes. *Moe* is distinguishable from the instant case because the Voting Rights Act is not in direct conflict with state power to tax; the taxation issue does not impact upon federal supremacy.

**3.** The jurisdictional statute of 28 U.S.C. § 1362 (1976) provides:

> The district courts shall have original jurisdiction of all civil actions, brought by any Indian tribe or band with a governing body duly recognized by the Secretary of the Interior, wherein the matter in controversy arises under the Constitution, laws, or treaties of the United States.

The Plaintiffs argue that because *Allen* extended the right to sue under 42 U.S.C. § 1973c to private individuals, the Plaintiffs should be in the same position as the Attorney General. We need not decide under *Allen* whether a private individual always has an authority to sue identical to that of the Attorney General under the Voting Rights Act. In support of their proposition that the Attorney General's power under the Voting Rights Act to sue to enjoin state taxation is an exception to Section 1341, Plaintiffs offer cases in which state taxation has been enjoined because a state had attempted to tax federal instrumentalities in contravention of federal supremacy. *See Moe*, 425 U.S. at 473–75, 96 S.Ct. at 1641–42. There is no allegation in this case that the Mississippi bonding procedure impinges on federal supremacy by placing a tax upon a federal instrumentality. Here the alleged conflict with federal voting law is incidental to a state bonding procedure which is otherwise legal. The Plaintiffs have not alleged that the Voting Rights Act limits the state power to tax, but rather that it places some requirements on this particular procedure. Since there is no inherent conflict between the state power to tax and the federal law invoked, the Court believes this case does not justify an exception to Section 1341. The Plaintiffs' argument is not persuasive that a Section 5 claim was intended to override the jurisdictional bar erected by Section 1341.

### IV.

■ Finding that Section 1341 is applicable in this case and that it is not defeated or avoided by the Section 5 claim, the crucial question is whether the remedy in Mississippi state courts is adequate. Section 1341 provides that a district court shall not impede state tax administration or any tax under state law "whereby a plain, speedy and efficient remedy may be had in the courts of such state." If there is not an adequate or plain remedy in state courts, then federal court jurisdiction is not precluded by Section 1341.

As stated previously, *Hathorn v. Lovorn* clearly allows Section 5 claims to be heard in Mississippi state courts. *Hathorn,* 457 U.S. at 268–69, 102 S.Ct. at 2429–2430. While Plaintiffs urge that they desire to bring a direct action under Section 5 rather than be permitted to raise it collaterally in a validation proceeding, *Bland v. McHann,* 463 F.2d 21 (5th Cir.1972), *cert. denied,* 410 U.S. 966, 93 S.Ct. 1438, 35 L.Ed.2d 700 (1973), holds that for a state remedy to be adequate under Section 1341, it does not have to be "the best remedy available or even equal to or better than the remedy which might be available in the federal courts." *Bland,* 463 F.2d at 29. The Plaintiffs have a plain, speedy and efficient remedy for presenting their Section 5 claims in the bond validation proceedings as set forth in *Miss. Code Ann.* § 31–13–3 to–7 (1972). Section 31–13–5 provides for a hearing before the Chancery Court of the county in which the district proposing to issue the bonds is situated. Notice is given of the day set for the hearing, and any taxpayer who appears or files an objection to the issuance of the bonds may have his grievance heard and adjudicated. *See Miss. Code Ann.* § 31–13–5 (1972) (hearing on additional competent, relevant and material evidence as to validity of proposed bonds.) The statute also provides that a party dissatisfied with the decree of the Chancellor may appeal to the Mississippi Supreme Court.

The bond validation hearing should address any and all objections which taxpayers may have to the issuance of the bonds. The Mississippi Supreme Court has declared:

> [T]he scope of the [validation] hearing must be sufficiently broad to consider all questions that need to be resolved before the bonds are sold. By statute or otherwise this state has no power to cut off from litigation secured due process rights merely by restricting the scope of the bond validation proceeding.

*In re Validation of $7,800,000 Combined Utility System Revenue Bond,* 465 So.2d 1003, 1012 (Miss.1985). In an earlier case the state court held that the validation

scheme provides an easy remedy for every taxpayer, whereby he may have his day in court without the hazard and risk of seeking the aid of an equity court by injunction. *Love v. Mayor of Yazoo City*, 162 Miss. 65, 138 So. 600, 603 (1932). "Granting state courts the power to decide, as a collateral matter, whether § 5 applies to contemplated changes in election procedures will help insure compliance with the preclearance scheme." *Hathorn*, 457 U.S. at 268, 102 S.Ct. at 2429.

This Court therefore finds that Plaintiffs may raise their Section 5 claims in the validation hearing of the bonds proposed by the Supervisor Districts of Copiah County. Plaintiffs have an adequate, plain and efficient remedy in state court to pursue their claims challenging the validity and enforcement of *Miss.Code Ann.* § 19–9–11 (1972) as implemented by the State and by Copiah County. Thus, this Court dismisses Plaintiffs' action for lack of jurisdiction pursuant to 28 U.S.C. § 1341.

A judgment of dismissal will be entered in accordance with Rule 12(b)(1) of the Federal Rules of Civil Procedure.