John BARNETT, et al., Plaintiffs,

v.

Geraldine G. BAILEY, et al., Defendants.

No. 88–53–ATH(DF).

United States District Court, M.D. Georgia, Athens Division.

Dec. 14, 1990.

John Ray Nicholson, John Jay McArthur, Nicholson & McArthur, P.A., Athens, Ga., for plaintiffs.

Robert E. Ridgway, Hartwell, Ga., E. Freeman Leverett, Heard, Leverett & Phelps, Elberton, Ga., Walter James Gordon, Hartwell, Ga., W. Grover Dudley, Hartwell, Ga., for defendants.

FITZPATRICK, District Judge.

This case is presently before the court on a motion for attorney's fees made by the plaintiffs. The underlying suit claimed that Hart County, Georgia, officials failed to preclear an election plan with the United States Department of Justice as required by Section 5 of the Voting Rights Act, 42 U.S.C. § 1973c. The plaintiffs' complaint also alleged that members of the Democratic Party and Hart County government conspired to manipulate slates of candidates for the County's old and new forms of government so that only those whom they supported would be elected, but the document is devoid of any mention of racial animus or discrimination. The only mention of race is contained in paragraph 22, where it is stated that one of the plaintiffs is a black female asserting her rights under the Voting Rights Act. A companion case, *Mayfield v. Crittenden*, CA–88–56–ATH (M.D.Ga.1989), was filed alleging vote dilution in violation of the Voting Rights Act. After an injunction was issued, events transpired that caused this case to be declared moot on October 25, 1988, with the question of attorney's fees reserved for a later date, while the companion case was given a plan for resolution in that same order.

Before the question of attorney's fees can be reached, the court must decide whether jurisdiction exists. The defendants claim that since no allegation of racial animus was made the court had no jurisdiction to issue its previous injunction and has none now to hear the plaintiffs' motion, since the Voting Rights Act does not reach nonracial, politically motivated conspiracies. The mere fact that one of the plaintiffs is black, the defendants reason, does not give this case the necessary racial element. Plaintiffs deny that a claim under Section 5 of the Voting Rights. Act requires any allegation of racial animus. The question thus becomes whether a cause of action based on a violation of Section 5 of the Voting Rights Act requires an allegation of racial animus to be viable. The court believes that it does, and so lacks jurisdiction to decide the plaintiffs' motion.[1]

The first step in the court's analysis is an examination of the statute itself. Section 5 states in pertinent part:

Whenever a State or political subdivision with respect to which the prohibitions set forth in section 1973b(a) of this title based upon determinations made under the first sentence of section 1973b(b) of this title are in effect shall enact or seek to administer any voting qualification or prerequisite to voting, or standard, practice, or procedure with respect to voting ... such State or subdivision may institute an action in the United States District Court for the District of Columbia for a declaratory judgment that such qualification ... does not have the purpose and will not have the effect of denying or abridging the right to vote on account of *race or color* ... *Provided,* That such qualification ... may be enforced without such proceeding if the qualification ... has been submitted by

the chief legal officer or other appropriate official of such State or subdivision to the Attorney General ...

42 U.S.C. § 1973c (first emphasis added).[2] Section 5 thus specifically requires certain states and their subdivisions to either seek declaratory judgments that proposed voting practices do not have a discriminatory purpose or effect based on race or color, or to obtain preclearance from the Attorney General that the proposals are permissible.

An examination of the Voting Rights Act as a whole supports this conclusion. The statute begins at 15 U.S.C. § 1971, subsection (a) of which is entitled in part: Race, color, or previous condition not to affect right to vote; .... Subchapter I–A, concerned with the enforcement of voting rights, starts with § 1973, which is entitled: Denial or abridgement of right to vote on account of race or color through voting qualifications or prerequisites. A further examination of the text of the individual sections of the statute makes it clear that considered in its entirety, the Voting Rights Act is concerned with removing racial discrimination in voting practices. The very purpose of the Act, according to the Supreme Court, is "to banish the blight of racial discrimination in voting." *South Carolina v. Katzenbach,* 383 U.S. 301, 308, 86 S.Ct. 803, 808, 15 L.Ed.2d 769 (1966). For the court to decide that some allegation of racial animus is unnecessary to bring a claim under Section 5 would unjustifiably separate that section from the rest of the statute and be unsupported by both the context and purpose of the law.

The cases examined by the court show that a claim of racial discrimination is essential for any Voting Rights Act case. In *Beatty v. Dinkins,* 478 F.Supp. 749 (S.D.N.Y.1979), a state senator brought a claim

---

1. The court is aware that at a conference held in Athens, Georgia, on February 27, 1990, the plaintiffs and their counsel may have been led to think that an award of attorney's fees was forthcoming. On February 1, Mr. Milton Cook, one of the plaintiffs, wrote the court a letter in which he complained of counsel's failure to file a motion for an award of fees. The court agreed that there was no excuse for such an oversight, ordered that such a motion be filed and stated that it was considering sanctions

against plaintiffs' counsel. Regardless of the impression given at this conference, it took place before the court had researched the question of jurisdiction considered in this order.

2. The Voting Rights Act, including Section 5, also protects linguistic minorities, and although no such group is present in this case the court's analysis would apply to them also.

under the Voting Rights Act, including Section 5, seeking an injunction requiring the Clerk of the City of New York to place a referendum on the ballot. The defendant had refused to put the proposal on the ballot after determining that the required number of signatures had not been obtained. After first deciding that it was permissible for a single judge to decide the question of subject matter jurisdiction, although not the merits of the case, the court stated that there was no jurisdiction under the Act since the plaintiff had made no allegation of racial discrimination,[3] and so did not even reach the question of whether the plaintiff had alleged the requisite change in voting procedures to require preclearance under Section 5. Additionally, the court declined to exercise jurisdiction to avoid being thrust into a local election dispute which should have been decided by a state court. 478 F.Supp. at 750–52, 752 fn. 3.

In *Beatty v. Esposito*, 439 F.Supp. 830 (E.D.N.Y.1977), the plaintiffs claimed that the removal and replacing of election inspectors without their approval was a change in election procedures requiring preclearance under Section 5. In granting the defendants' motion to dismiss, the court stated that:

> ... inasmuch as the Voting Rights Act of 1965 is designed to prevent racial discrimination in state voting practices, *see Powell v. Power, supra,* and inasmuch as the procedure of impanelling a three-judge court under Section 1973c in accordance with the Supreme Court's decision in *Allen v. St. Board of Elections, supra,* is an extraordinary measure judicially designed to prevent subversion of the statutory purpose of the Voting Rights Act by noncompliance with Section 1973c, a minimal prerequisite to such an extraordinary measure is a good-faith allegation of racial discriminatory effect.

439 F.Supp. at 832. Since the plaintiffs had made no such allegation, the court refused to impanel a three-judge court or let the action continue.

Both *Dinkins* and *Esposito* cite *Powell v. Power*, 436 F.2d 84 (2nd Cir.1970), in support of their rulings. Although *Powell* does not specifically concern Section 5 of the Voting Rights Act, its facts and reasoning are applicable to the case at bar. In *Powell*, six voters in a congressional primary brought suit under the Act alleging that state officials had erred by allowing persons not qualified under state law to vote. The court held that the plaintiffs had no case because they failed to claim any purposeful and wrongful discrimination, which was required in light of the context of the Act and its purpose—the abolition of racial discrimination in the election process. 436 F.2d at 87.

An examination of *Dinkins, Esposito* and *Powell* yields the conclusion that a claim of racial discrimination is required for a viable claim under Section 5 of the Voting Rights Act. The record in the present case compels the same result as in *Dinkins.* The plaintiffs here have likewise made no claim of racial bias, and this court, like the one in *Dinkins,* believes it best to consider Section 5 with the Act as a whole in requiring such an allegation. Since such an accusation is required to impanel a three-judge court, as *Esposito* held, it should certainly be required to establish jurisdiction over a motion to award attorney's fees. The holding of *Powell* is also supportive, since if a claim of racial animus is required for a case under Section 2 of the Act it should also be necessary under Section 5, given the overall purpose of the Act. Considered together, these cases show that an allegation of racial discrimination is needed for a claim under Section 5 of the Act.

A further reason for this requirement is that without it the court could be drawn into purely political disputes. It is within neither the power nor the desire of this court to interject itself into partisan political matters untainted by evidence of racial bias. Allegations of electoral irregularities

---

3. Also, the court noted that there was no diversity jurisdiction, 478 F.Supp. at 751, which likewise does not exist in the case at bar.

not rising to the federal level are within the province of the states, and for a federal court to assume jurisdiction over such a matter would violate the basic principle of federalism: the sharing of power between the federal and state governments. An examination of the complaint and the record in this case reveals that what the plaintiffs are really attacking is an alleged political conspiracy by certain members of the Democratic Party in Hart County to fill the County's government with persons of their own choosing. Taken as true, the plaintiffs' allegations show serious misconduct on the part of these persons, but there is no hint of racial bias. As reprehensible as this conduct may have been, this court would be overstepping its bounds to intervene in a political dispute which lacks the element of racial discrimination needed to raise it to the federal level. Conspiracies of this sort are best left to the states.

The plaintiffs have attempted to show that an allegation of racial discrimination is not required for their claim, and was present in any case. They base most of their theory on the case of *Allen v. State Board of Elections*, 393 U.S. 544, 89 S.Ct. 817, 22 L.Ed.2d 1 (1969), which was in fact four cases involving the application of the Voting Rights Act to state election laws. The Supreme Court ultimately held that the amendments to state statutes in question had to be precleared under Section 5. The plaintiffs rely on a pair of statements used by the Court in analyzing some of the individual voting changes which were at issue. In distinguishing between Section 5 declaratory judgment actions brought by states and private individuals, the Court stated that when a private litigant brings such an action "[t]he only issue is whether a particular state enactment is subject to the provisions of the Voting Rights Act, and therefore must be submitted for approval before enforcement." 393 U.S. at 558–58, 89 S.Ct. at 828. The Court later said, commenting on new procedures for casting write-in votes:

> ... As in all these cases, we do not consider whether this change has a discriminatory purpose or effect. It is

clear, however, that the new procedure with respect to voting is different from the procedure in effect when the State became subject to the Act; therefore, the enactment must meet the approval requirements of § 5 in order to be enforceable.

393 U.S. at 570, 89 S.Ct. at 834.

The plaintiffs also rely on this case's companion, *Mayfield v. Crittenden*, CA–88–56–ATH (M.D.Ga.1989), where black voters of Hart County alleged that the at-large method of electing members of the Board of Finance diluted their voting power in violation of Voting Rights Act. This court entered an order on May 3, 1989, implementing a plan submitted by the parties which established a new form of government for Hart County. The factual background of this case is adequately given in the court's orders of October 25, 1988 and July 13, 1989, the latter of which also awarded plaintiffs' counsel fees of $18,-615.00. In their Second Supplemental Brief, pp. 4–5, in the present case, the plaintiffs reason that since racial discrimination was clearly established in *Mayfield* there is no need to show it again for the court to be able to award attorney's fees.

The court believes that the plaintiffs' reliance on *Allen* and *Mayfield* is misplaced. Both of the *Allen* quotes they cite concern not the jurisdictional requirements of a Voting Rights Act claim, but what a court hearing such an action must consider *after* jurisdiction has been established. Once the required allegation of racial discrimination or the threat thereof has been made and the court is able to exercise its jurisdiction, the only topic for inquiry is whether the changes in the election laws or regulations are subject to the preclearance requirement of the Act, not whether the changes actually have any discriminatory purpose or effect. As the Court said in a later case:

> ... [I]t is not our province, nor that of the District Court below, to determine whether the changes at issue in this case in fact resulted in impairment of the right to vote, or whether they were intended to have that effect.... Our inquiry is limited to whether the chal-

lenged alteration has the *potential* for discrimination....

*NAACP v. Hampton County Election Com'n*, 470 U.S. 166, 181, 105 S.Ct. 1128, 1136–37, 84 L.Ed.2d 124 (1985). This court, therefore, would only decide whether any changes in voting procedures have the potential for discrimination, and so must be precleared, but would not look for any actual discriminatory purpose or effect. The court is not obliged to search for this potential on its own; in order to have both the jurisdiction and ability to do this there must be some allegation of it in the plaintiff's complaint. Contrary to plaintiffs' claims, *Allen* does not establish that a Section 5 action may survive without the necessary allegation of racial discrimination.

From the standpoint of judicial economy, the plaintiffs' invitation to rely on the record of *Mayfield* is tempting, but it fails to consider the essential difference between the two cases. In *Mayfield*, the complaint clearly alleged acts by the defendants with the racially discriminatory purpose and effect of diluting the voting power of black citizens of Hart County. Here, by contrast, the complaint alleges a purely political conspiracy. Race is only mentioned in paragraph 22, where it is stated that plaintiff Sarah Mayfield is black and is asserting her rights under the Voting Rights Act. This statement may be correct as to Ms. Mayfield's status, but it gives no hint as to what allegedly racially discriminatory acts were committed by the defendants. It would appear that while racial discrimination was an issue in *Mayfield*, it is not in the present case, which has all the markings of a purely political dispute that landed in federal court just because one of the plaintiffs happened to be black. This alone is simply not enough to invoke federal jurisdiction under Section 5 or any other part of the Voting Rights Act.

In their Second Supplemental Brief, pp. 5–6, the plaintiffs have requested permission to reopen discovery in the event that the court decides against them on the jurisdictional question. After considering the record, the court concludes that this would not be appropriate. This case is already two years old, the record reveals no hint of racial discrimination,[4] and the court feels that the plaintiffs have had more than adequate time to search for it. Moreover, since this case was brought under the Voting Rights Act, the plaintiffs should have known to look for this element. Even if the court were to accept that the plaintiffs failed to develop the racial angle because they did not realize it was required, it must also keep in mind the burden that further discovery would place on the defendants. The plaintiffs' request to conduct further discovery is denied.

In summation, the court concludes that an allegation of racial discrimination is necessary to support a claim under Section 5 of the Voting Rights Act. Since no such claim was made in this case, the court lacked jurisdiction to issue its previous injunction insofar as it was based on Section 5, and now lacks jurisdiction to entertain the plaintiffs' motion for attorney's fees. The court realizes that its holding could lead to the seemingly odd result of nobody being able to challenge in federal court a failure to preclear an election plan without an allegation of racial discrimination. This result is not so strange, however, when one considers the purpose behind the Voting Rights Act and the principle of federalism. The statute was designed to eliminate racial discrimination in voting practices and give the victims of such acts an avenue of relief in the federal courts. If there is no

**4.** The testimony of Margaret Crossley, Secretary to the Hart County Democratic Executive Committee, given at the November 14, 1990, hearing on the plaintiffs' motion details the conspiracy to manipulate the candidates for the old and new forms of government, but makes no mention at all of any racial purpose behind this plan. Ms. Crossley, it should be noted, was called as a witness by plaintiffs' counsel, who did not ask if she knew of any racial motive behind the defendants' actions, although he must have been aware of their claim of lack of jurisdiction by this time. Additionally, the minutes of the Executive Committee's meeting of June 25, 1988, entered into evidence at this hearing, make no mention of racial discrimination; the persons who attended were more interested in the confusion surrounding the candidates and the growing number of Republicans than anything else.

claim that the purpose of the law has been violated by allegedly racially discriminatory voting practices, then there is no reason to invoke the protection of the statute. To do so would be stretching the Act to cover situations it was not designed to reach. The purpose of the Act would not be served by using it to attack non-racial political conspiracies, the resolution of which lies in state political and judicial systems. Such challenges do not belong in a federal court.

The plaintiffs' motion for attorney's fees, costs and expenses is therefore DISMISSED for lack of jurisdiction.

SO ORDERED.