743 F.2d 852
 40 Fed.R.Serv.2d 209, Fed. Sec. L. Rep. P 91,683
 DELTA COAL PROGRAM, et al., Plaintiffs-Cross Claim
Plaintiffs-Appellees,
W. Paul Crum, Jr., and Mark W. Leonard,
Plaintiffs-Cross-Claim Defendants- Appellants,
v.
Robert H. LIBMAN, et al., Defendants,
Universal Heritage Investments Corporation, Defendant-Appellant.
 No. 83-8414.
 United States Court of Appeals,
Eleventh Circuit.
 Oct. 3, 1984.
 
 John A. Christy, Lawrence S. Burnat, David H. Flint, Atlanta, Ga., for Crum & Leonard.
 Phillip A. Bradley, Atlanta, Ga., Jeffrey L. Parker, Keith K. Hilbig, Torrence, Cal., for Universal.
 Joseph Manning, David A. Rabin, Atlanta, Ga., for plaintiff-appellee.
 Charles T. Huddleston, (as an interested party only) Atlanta, Ga., for Fieldstone.
 Appeals from the United States District Court for the Northern District of Georgia.
 Before RONEY and VANCE, Circuit Judges, and SIMPSON, Senior Circuit Judge.
 VANCE, Circuit Judge:
 
 
 1
 Appellants Paul Crum, Mark Leonard, and Universal Heritage Investments Corporation (UHIC) bring this interlocutory appeal to challenge the district court's, order allowing thirty-five individual plaintiffs to be substituted for a limited partnership under Fed.R.Civ.P. 17(a). 554 F.Supp. 684. We affirm.
 
 
 2
 To facilitate our consideration, we recount only those aspects of the rather involved procedural maneuvering below that are germane to the questions presented by appellants. In 1977 Crum and Leonard entered into an agreement with UHIC in which they promised to promote the sale of a mining claim owned by defendant Kentucky Eastern Coal Company (Kentucky). Their efforts resulted in the sale of the mining claim on December 30 of that year to thirty-seven individuals, including Crum and Leonard, each of whom purchased an undivided working interest in the claim. On the same date Crum and Leonard formed Delta Coal Program (Delta), a limited partnership composed of the thirty-seven investors, to exploit the claim and to provide a tax shelter. Crum and Leonard served as co-managers of Delta.
 
 
 3
 The deal turned sour when some of the co-owners discovered that the mining claim was not as extensive as they had believed. In October 1979 Crum and Leonard filed suit in district court against several defendants, including Kentucky. They brought the suit as individuals and as co-managers of the third named plaintiff, Delta. The complaint alleged violations of sections 12(2) and 17(a) of the Securities Act of 1933 (15 U.S.C. Secs. 77l (2), 77q(a)), section 10(b) of the Securities Exchange Act of 1934 (id. Sec. 78j(b)) and Rule 10b-5 (17 C.F.R. Sec. 240.10b-5) promulgated thereunder, as well as state law securities and fraud claims. The complaint invoked the court's jurisdiction under the special jurisdictional provisions found in each of the two federal statutes, section 22(a) of the Securities Act, 15 U.S.C. Sec. 77v(a), and section 27 of the Securities Exchange Act, 15 U.S.C. Sec. 78aa. After it became apparent that Crum and Leonard might be liable to the co-owners for their part in the transaction, Delta retained separate counsel on May 29, 1980. In late October Delta added UHIC as a defendant, asserted RICO (18 U.S.C. Secs. 1961-1968) and state blue sky claims against the defendants, and filed a crossclaim against Crum and Leonard asserting all the federal claims then pending against the defendants. At this point, Delta invoked the court's jurisdiction under yet another statute, RICO's jurisdictional provision, 18 U.S.C. Sec. 1964(c).
 
 
 4
 With Delta now acting as the sole representative of the co-owners' interests, the district court attempted in June of 1982 to resolve an issue that had plagued the suit almost since Crum and Leonard's filing of the initial complaint--the status of Delta as a proper party plaintiff. In its opinion of June 7, the court agreed with the defendants that Delta was not entitled to assert any of its federal claims on its own behalf. The court concluded that Delta could not assert the securities claims under section 12(2), section 10(b) and rule 10b-5 because Delta, as opposed to the investors comprising Delta, was not a "purchaser" of securities. See 15 U.S.C. Sec. 77l (2); Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975). Similarly, the court concluded that Delta could not pursue its RICO claim because the only entities possibly "injured in [their] business or property," 18 U.S.C. Sec. 1964(c), were the investors themselves. As to the section 17(a) claim, the court concluded that no private cause of action exists under that provision.[1] Having disposed of all of Delta's federal claims, the court allowed Delta a week to decide whether to move for substitution of parties under Fed.R.Civ.P. 17(a) in case the individual investors wished to assert the viable federal claims themselves. On June 18 Delta and the investors filed a motion for substitution, which the court granted on September 20. The new plaintiffs filed an amended complaint reasserting against Crum, Leonard and each defendant the claims previously asserted by Delta.
 
 
 5
 Now on the defensive, Crum and Leonard join UHIC in appealing the district court's authorization of a rule 17(a) substitution.[2] All three argue that the district court lacked subject matter jurisdiction over the federal claims at issue. UHIC further asserts that the requisites for a rule 17(a) substitution had not been established.
 
 
 6
 In addressing appellants' jurisdictional challenge, we acknowledge at the outset that federal courts are courts of limited jurisdiction. Where, as here, they exercise their decisionmaking power by virtue of special jurisdictional statutes, they must take care to exercise that power only within the limits established by Congress. At the same time, such statutes represent Congress' affirmative decision to assign to the federal courts a prominent role in shaping the substantive law in question. When the courts are called upon to determine what factors constitute essential elements to their jurisdiction under these special statutes, they should not infer requirements that would needlessly shut the courthouse door to the very kinds of controversies to which Congress particularly intended to afford a federal forum.
 
 
 7
 Appellants claim that each of the jurisdictional statutes in question confers jurisdiction on the district court only when the plaintiff properly alleges not only that the defendant has violated the substantive statute, but also that the plaintiff possesses the right being violated. They argue that because the federal claims here belonged to the investors, not Delta, Delta failed to meet the second jurisdictional requirement, and the court never had the power to entertain those claims. Given this fatal flaw in the court's jurisdiction over the federal claims, it also lacked the power to decide Delta's state law claims, as pendent jurisdiction can only be exercised where there first exists a federal claim that itself has "substance sufficient to confer subject matter jurisdiction on the court." United Mine Workers v. Gibbs, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). In short, appellants contend that because Delta had no claims that the district court had the power to hear, it should have been dropped from the litigation, leaving no entity for which the individual investors could have been substituted under rule 17(a). Appellants add that it would be improper for the district court to attempt to remedy its initial lack of jurisdiction by the substitution of the co-owners, because a lack of subject matter jurisdiction cannot be remedied retroactively by resort to procedural rules. See Pressroom Unions-Printers League Income Sec. Fund v. Continental Assurance Co., 700 F.2d 889, 893 (2d Cir.), cert. denied, --- U.S. ----, 104 S.Ct. 148, 78 L.Ed.2d 138 (1983); Fed.R.Civ.P. 82.
 
 
 8
 Our analysis need go no further than appellants' initial premise that the district court lacked subject matter jurisdiction over Delta's federal claims. The proper starting point is the wording of the three jurisdictional statutes invoked by appellees. See Aldinger v. Howard, 427 U.S. 1, 17, 96 S.Ct. 2413, 2421, 49 L.Ed.2d 276 (1976) (emphasizing importance of statutory language in case of special jurisdictional grant). Section 22(a) of the Securities Act of 1933, 15 U.S.C. Sec. 77v(a), grants the district courts jurisdiction over "offenses and violations under this subchapter and under the rules and regulations promulgated by the Commission in respect thereto." Similarly, section 27 of the Securities Exchange Act of 1934, 15 U.S.C. Sec. 78aa, grants the district courts "exclusive jurisdiction of violations of this chapter or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by this chapter or the rules and regulations thereunder." Finally, appellees' jurisdictional grounding for their RICO claim lies in section 901(a) of the Organized Crime Control Act of 1970, 18 U.S.C. Sec. 1964(a)-(c), which accords the district courts jurisdiction over private actions challenging "violations of section 1962 of this chapter."
 
 
 9
 Common to each of these jurisdictional statutes is the requirement that there be a "violation" of the corresponding substantive statute. Though not construing the words of the statutes directly, courts in this circuit have given some contour to that requirement in the securities area. Our cases establish that because an element essential to a violation of section 10(b) or rule 10b-5 is a sale or purchase, plaintiffs who have been unable to characterize their key transactions with the defendants as such have failed to invoke subject matter jurisdiction for those claims. Reid v. Hughes, 578 F.2d 634 (5th Cir.1978); National Bank of Commerce v. All Am. Assurance Co., 583 F.2d 1295, 1298 (5th Cir.1978); Lutgert v. Vanderbilt Bank, 508 F.2d 1035, 1038 (5th Cir.1975). Here, the requirement of a sale or purchase has been met. The crossclaim and the complaint and amendments unequivocally assert a straightforward purchase of securities by the investors who comprised Delta.
 
 
 10
 It is another matter to find within these jurisdictional provisions the additional requirement that the party possessing the enforceable right be named as plaintiff. Such a requirement is not obvious from the wording of the statutes,[3] and to the extent that it simply represents broader notions of justiciability that inhere in standing doctrine, Delta's status as representative of the co-owners' interests, combined with its allegations of injury in fact to those interests, suffices to pass the minimal test required for invoking the court's jurisdiction. See Sierra Club v. Morton, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972). A plaintiff's suit may, of course, be subject to dismissal if the substantive statute on which he relies affords no right to relief to either him or those he represents. But that is properly an issue for determination on the merits. See Bell v. Hood, 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946) ("[T]he failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction.");[4] see also Williamson v. Tucker, 645 F.2d 404, 415 (5th Cir.), cert. denied, 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981) (cautioning against dismissal for lack of subject matter jurisdiction when basis of jurisdiction is also an element of cause of action).
 
 
 11
 Even if there were some reason for reading a proper party plaintiff requirement into these statutes, the facts of this case would lead us to find jurisdiction in any case. Here, Delta has such an identity of interest with the individual co-owners that their claims have functionally been before the court since the outset of this litigation. Damages are claimed in terms of the losses suffered by the co-owners, and monetary relief is sought to be awarded to them. In addition, the pleadings clearly set forth the factual allegations upon which the co-owners' claims for relief are grounded. In support of the section 10(b) and rule 10b-5 claims, for example, the pleadings allege intentional misrepresentations and omissions of material fact by Crum, Leonard and the defendants to the co-owners, and justifiable reliance by the co-owners, proximately causing injury to them. Cf. Huddleston v. Herman & MacLean, 640 F.2d 534, 543 & n. 12 (5th Cir. Unit A 1981), rev'd in part on other grounds, 459 U.S. 375, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983). A district court does not exceed its power when it takes jurisdiction over a controversy, even if not brought by the real party in interest, as long as there exists a substantial identity of interest between the original plaintiff and the true party in interest, and as long as the pleadings set forth the facts upon which the real party would base its invocation of the court's jurisdiction in its own right.[5]
 
 
 12
 We now turn to appellant UHIC's second argument for reversal: that the requisites for a rule 17(a) substitution had not been established.[6] UHIC contends, first, that the substitution was untimely. See Fed.R.Civ.P. 17(a) ("No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ... joinder or substitution of ... the real party in interest ....") (emphasis added). Second, UHIC argues that Delta should not be entitled to a substitution because the investors' status was obvious from the beginning. See id. advisory committee note (rule "is intended to prevent forfeiture when determination of the proper party to sue is difficult or when an understandable mistake has been made.").
 
 
 13
 The procedural history of the case refutes UHIC's contentions. On December 29, 1980, long before the district court determined that Delta was not a proper party plaintiff, Delta had attempted to ward off any challenge to its status by filing a motion for class certification. The motion remained pending without resolution by the district court up to and after the court's order of June 7, 1982. Against this background, we decline to find that the district court exceeded its broad discretion in treating Delta's request for substitution as timely. We also do not find it necessary to delve into whether the defect was so obvious as to constitute any forfeiture on Delta's part, for the mistake is traceable to Crum and Leonard, who bear responsibility for the initial formulation of the suit. Appellants have failed to persuade us that the district court erred in permitting this substitution under rule 17(a).[7]
 
 
 14
 AFFIRMED.
 
 
 
 [1]
 See Gunter v. Hutcheson, 433 F.Supp. 42 (N.D.Ga.1977). The question apparently is an open one in the eleventh circuit, see Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu, 675 F.2d 1169, 1172 n. 1 (11th Cir.1982), but it has not been presented to us on this appeal
 
 
 [2]
 UHIC has further requested that it be dismissed from the case because only Delta has asserted a claim against it. Because of our disposition, we deny this request
 
 
 [3]
 Cf. Pressroom Unions-Printers League Income Sec. Fund v. Continental Assurance Co., 700 F.2d 889, 893 (2d Cir.), cert. denied, --- U.S. ----, 104 S.Ct. 148, 78 L.Ed.2d 138 (1983) (finding the words of ERISA's jurisdictional statute to require a proper party plaintiff as an element of subject matter jurisdiction). Appellants appear to argue that Pressroom Unions' holding should be extended to all special jurisdictional statutes. This claim ignores the reasoning of that case, which consisted largely of a statutory analysis that pointed out that Congress delineated with particular care the kinds of parties eligible to sue within the jurisdictional provision itself. 29 U.S.C. Sec. 1132(e)(1). We perceive no inconsistency between our holding today and Pressroom Unions. To the extent that an inconsistency may arguably exist we adhere to the conclusions reached in this opinion
 
 
 [4]
 The Bell v. Hood Court acknowledged that the plaintiff's inability to assert a federal claim could in some circumstances lead to a dismissal for lack of subject matter jurisdiction as well, but it limited such dismissals to occasions when the federal claim "clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous." Bell v. Hood, 327 U.S. 678, 682-83, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946). Appellants deny the applicability of Bell v. Hood in securities regulation cases, a position that is tenable only if one ignores the wealth of fifth circuit cases expressly utilizing the Supreme Court's standard. See Meason v. Bank of Miami, 652 F.2d 542, 546-47 (5th Cir. Unit B 1981), cert. denied, 455 U.S. 939, 102 S.Ct. 1428, 71 L.Ed.2d 649 (1982); Williamson v. Tucker, 645 F.2d 404, 415-16 (5th Cir. Unit A), cert. denied, 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981); Bell v. Health-Mor, Inc., 549 F.2d 342, 344 (5th Cir.1977). Assuming that Bell v. Hood is applicable, say appellants, the federal claims here are wholly insubstantial and frivolous. The allegations to which we refer in text, however, make clear that the claims, while prosecuted by an improper plaintiff, are neither insubstantial nor frivolous
 
 
 [5]
 Since we decide that the district court retained jurisdiction throughout over Delta's federal claims against appellants, we need not delve into appellants' pendent jurisdiction argument. Similarly, since we conclude that the crossclaim and the original complaint with amendments invoked the subject matter jurisdiction of the court, we need not consider the implications of Fed.R.Civ.P. 82
 
 
 [6]
 Appellants make much of Summit Office Park v. United States Steel Corp., 639 F.2d 1278 (5th Cir. Unit A 1981). In Summit the plaintiff was an indirect purchaser of reinforcing steel bar materials. It filed suit against the original seller, individually and on behalf of a putative class of indirect purchasers, under the Sherman and Clayton Acts. While the action was pending, the Supreme Court held that only direct purchasers have a cause of action under the federal antitrust laws. The plaintiff moved to amend the complaint to substitute two new plaintiffs, both of whom were direct purchasers, and to alter the complaint's allegations to conform with the requirements of the Supreme Court's decision. The fifth circuit held that since the initial plaintiffs had no valid cause of action, they could not file the desired amendment. Id. at 1282
 Summit, however, has no bearing on this case. Its holding by its terms extends "only" to instances where a plaintiff who lacks standing to assert a claim attempts to substitute "new plaintiffs, a new class, and a new cause of action," 639 F.2d at 1282 (emphasis added). Here, by contrast, the operative facts and the cause of action are not changed, but only the formally named plaintiff. Rule 17(a) was intended to extend to precisely this kind of situation, to ensure that the suit is prosecuted by the one possessing the right sought to be enforced. Lubbock Feed Lots, Inc. v. Iowa Beef Processors, 630 F.2d 250, 256-57 (5th Cir.1980); 6 C. Wright & A. Miller, supra, Sec. 1542 (1971).
 
 
 [7]
 In addition, we note that appellants have been unable to articulate any prejudice to their defense resulting from the substitution. Cf. Garcia v. Hall, 624 F.2d 150, 151 n. 3 (10th Cir.1980)