**John BARNETT, Sarah Mayfield and Milton Cook, Plaintiffs–Appellants,**

v.

**Geraldine G. BAILEY, John O. McCurley, Thomas Herndon, Ray H. Lewis, Bruce Teasley, James D. Oliver, Leonard M. Seymour, Terrell Fleming, Donnie Greenway, Frank Szabo, W. Grover Dudley and Joel L. Shirley, Defendants–Appellees.**

No. 91–8054.

United States Court of Appeals, Eleventh Circuit.

March 27, 1992.

John Jay McArthur, Athens, Ga., for plaintiffs-appellants.

E. Freeman Leverett, Heard, Leverett & Phelps, Elberton, Ga., Walter James Gordon, Hartwell, Ga., for defendants-appellees.

Before KRAVITCH and BIRCH, Circuit Judges, and KAUFMAN *, Senior District Judge.

* Honorable Frank A. Kaufman, Senior U.S. District Judge for the District of Maryland, sitting by designation.

1. The other defendants in this case are Thomas Herndon, Ray Lewis, James Oliver, Leonard

**1037**

KRAVITCH, Circuit Judge:

Plaintiffs-appellants John Barnett, Sarah Mayfield and Milton Cook ("plaintiffs" or "appellants") appeal the district court's dismissal of their motion for attorney's fees under 42 U.S.C. § 1988 for lack of federal subject matter jurisdiction. We hold that the district court's dismissal as to defendants-appellees Geraldine Bailey and John McCurley constituted a ruling on the merits of an otherwise moot case, and therefore was error. Accordingly, we reverse and remand to the district court for a hearing on the issue of appellants' entitlement to attorney's fees from those defendants in their respective official capacities. We affirm the district court's dismissal of appellants' motion with respect to the other defendants in this case [1] because the district court had no subject matter jurisdiction over plaintiffs' Voting Rights Act action as it pertained to those individuals.

## I. Background

Under the system of government in effect in Hart County, Georgia, between 1959 and 1987 ("1959 system"), the county was governed by a Commissioner of Roads and a three-member Board of Finance, all four of whom were elected county-wide. In 1988, Hart County and the Georgia General Assembly formulated a plan whereby the County electorate would choose by referendum a new system of government from three options provided on the ballot. On April 12, 1988, the citizens of Hart County voted to adopt a new system of county government ("1988 system") whereby the county would be governed by a Road Commissioner, elected county-wide; a Chairman, also elected county-wide; and a three-member Board of Commissioners, the members of which were to be elected from districts. The county did not seek preclearance of the referendum by the United States Department of Justice ("Justice Department") under the procedure provided in

Seymour, Terrell Fleming, Donnie Greenway, Frank Szabo, W. Grover Dudley, Joel Shirley and Bruce Teasley.

section 5 of the Voting Rights Act, 42 U.S.C. § 1973c.

After the referendum, Hart County submitted its new system of government to the Justice Department for preclearance pursuant to section 5. Within the 60–day period prescribed in the Act, the Justice Department requested additional information regarding the county's submission, thereby extending the Department's period of determination by an additional 60 days. Because of this delay, the review period extended beyond August 9, 1988, the date of the general primary election whereby candidates under the new system of county government were to be nominated.

During the months preceding the August 9 primary, the process for qualification of candidates for that election took place. In the course of this process, the Hart County Democratic Executive Committee, headed by its Chairman, appellee John McCurley, permitted several individuals[2] to qualify for the August 9 primary under both the 1988 system and the 1959 system. Conversely, Chairman McCurley allegedly told appellant John Barnett, who sought qualification for a position under the 1959 system, that the County Democratic Executive Committee intended to qualify candidates for positions under the 1988 system only; Mr. Barnett declined to qualify under the 1988 system. Eventually, the County Democratic Executive Committee reopened the qualification process to permit qualification of candidates for positions under the 1959 system as well as under the 1988 system; however, only those candidates who had already registered under the 1988 system were allowed to qualify for candidacy under the 1959 system. This requirement precluded Mr. Barnett from qualifying under the 1959 system.

On July 29, 1988, Mr. Barnett and appellants Sarah Mayfield and Milton Cook[3] filed suit in the United States District Court for the Middle District of Georgia against appellee Geraldine Bailey in her official capacity as Hart County Superintendent of Elections; against Chairman McCurley in his official capacity; and against the aforementioned Democratic primary candidates. Plaintiffs alleged, *inter alia,* that both (1) the qualification of candidates under the 1988 system, and the limited reopening of candidate qualifications under the 1959 system and (2) the institution in general of the 1988 system of government constituted alterations of voting procedures which were subject to preclearance by the Justice Department pursuant to section 5 of the Voting Rights Act. Plaintiffs made no allegation that either the Democratic Executive Committee's manipulation of the candidate qualification process or the County's conduct of the August 9, 1988 primary election under the 1959 or 1988 systems of government discriminated against black voters or candidates, or that these actions carried with them a potential for such discrimination.

The plaintiffs sought, *inter alia,* the following relief: (1) a temporary restraining order enjoining Election Superintendent Bailey from conducting the August 9, 1988 general primary election pending Justice Department preclearance of the 1988 system; (2) a hearing on the granting of a preliminary injunction on the issue of the general primary; and (3) a declaratory judgment that the candidate qualification process undertaken by the Democratic Executive Committee violated section 5 of the Voting Rights Act.

On the day plaintiffs filed their complaint, the district court entered a temporary restraining order enjoining the August 9 general primary election and retaining the 1959 system. The court held that the institution of the 1988 system of government, and the candidate qualification processes related thereto, were subject to the preclearance requirements of section 5, and that the plaintiffs had met their burden of proving immediate and irreparable injury in the absence of issuance of the

---

2. These individuals, listed in note 1, *supra,* are defendants-appellees in this case, along with Chairman McCurley and Hart County Superintendent of Elections Geraldine Bailey.

3. Ms. Mayfield is a black resident and registered voter of Hart County. Mr. Cook is a white resident and registered voter of Hart County.

TRO. *Barnett v. Bailey*, No. CA–88–53–ATH (M.D.Ga. July 29, 1988). The court also ordered the candidate qualification process to be reopened to permit any individual to qualify as a candidate for the Board of Finance under the 1959 system of government. *Id.* On August 8, 1988, the district court extended the TRO until the case could be considered by a three-judge district court on application for a preliminary injunction pursuant to 28 U.S.C. § 2284(b)(3). Thereafter, in late August, defendants filed their responsive pleadings; certain defendants moved to dismiss the case on substantive and/or jurisdictional grounds.

After a three-judge court was empaneled on September 1, 1988, this case was consolidated with another case challenging the constitutionality of Hart County's old system of government.[4] The three-judge court, by Order dated October 26, 1988, declared the instant case moot by passage of time. The court reserved the issue of plaintiffs' entitlement to attorney's fees for consideration at a later date, reassigning this and any other outstanding issues to the Honorable Duross Fitzpatrick (U.S.D.C. M.D.Ga.), who had entered the original TRO.

Plaintiffs subsequently moved for attorney's fees, costs and expenses pursuant to 42 U.S.C. § 1988. By order dated December 14, 1990, the district court dismissed plaintiffs' motion, holding that because the plaintiffs' complaint under section 5 had not alleged racial animus or discrimination on the part of the defendants, the court lacked federal subject matter jurisdiction to have issued its previous temporary restraining order and to hear plaintiffs' mo-

tion for attorney's fees. *Barnett v. Bailey*, 753 F.Supp. 949 (M.D.Ga.1990). Plaintiffs appeal the district court's dismissal.

## II. *Analysis*

The appeal presents a single issue: whether the district court's decision to dismiss plaintiffs' motion for attorney's fees for failure to allege racial animus or discrimination in plaintiffs' complaint under section 5 of the Voting Rights Act amounted to a jurisdictional ruling or constituted a decision on the merits. If plaintiffs' failure to allege racial animus or discrimination did indeed deprive the district court of federal subject matter jurisdiction, then the district court's dismissal was appropriate, given that a court *sua sponte* can raise a jurisdictional defect at any time, leading to dismissal of the relevant action. *Fitzgerald v. Seaboard System R.R., Inc.*, 760 F.2d 1249, 1251 (11th Cir.1985), *citing Philbrook v. Glodgett*, 421 U.S. 707, 95 S.Ct. 1893, 44 L.Ed.2d 525 (1975). If, however, the district court's dismissal constituted a ruling on the merits in a case that already had been dismissed as moot, then the district court erred, and we should remand to the district court for a determination of the merits of plaintiffs' motion for attorney's fees. *Doe v. Marshall*, 622 F.2d 118, 119 (5th Cir.), *cert. denied*, 451 U.S. 993, 101 S.Ct. 2336, 68 L.Ed.2d 855 (1981).[5] We review the district court's jurisdictional decision de novo. *Local Union 72 v. John Payne Co., Inc.*, 850 F.2d 1535, 1537 (11th Cir.1988).[6]

### A. Section 5 of the Voting Rights Act

The Voting Rights Act "implemented Congress' firm intention to rid the country

---

4. In that case, *Mayfield v. Crittenden*, CA–88–56–ATH (M.D.Ga.1989), the district court held the 1959 system of government in Hart County unconstitutional on vote dilution grounds, and ordered the formulation of a plan of resolution, pursuant to which a new, constitutional form of government for Hart County would be established.

5. The Eleventh Circuit, in the en banc decision *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

6. A district court's decision on whether to award attorney's fees is reviewable under an "abuse of discretion" standard. *Taylor v. City of Fort Lauderdale*, 810 F.2d 1551, 1556 (11th Cir.1987). In this case, however, we are not deciding whether or not the plaintiffs are ultimately entitled to attorney's fees under 42 U.S.C. § 1988 as prevailing parties in their section 5 action, but rather whether the court's dismissal for lack of jurisdiction was error. We leave to the district court on remand determination of the merits of plaintiffs' motion.

of racial discrimination in voting." *Allen v. State Board of Elections*, 393 U.S. 544, 550, 89 S.Ct. 817, 822, 22 L.Ed.2d 1 (1969). Under section 5 of the Act, a state covered by the Act, or a political subdivision thereof, cannot enact or enforce "any voting qualification or prerequisite to voting, or standard, practice or procedure with respect to voting different from that in force on November 1, 1964" without first obtaining a declaratory judgment from the United States District Court for the District of Columbia that the voting practice or procedure "does not have the purpose and will not have the effect of denying or abridging the right to vote on account of race or color...." 42 U.S.C. § 1973c. Instead of seeking such a declaratory judgment, the state or subdivision may request expedited review and preclearance of the proposed voting change by the Justice Department. At issue in the district court was the plaintiffs' claim that Hart County's failure to seek either declaratory relief in the United States District Court for the District of Columbia or Justice Department preclearance of the 1988 election reform, and the candidate qualification process related thereto, violated section 5.

### B. Jurisdiction

#### i. *The Dispute Over Section 5's Pleading Requirements*

As noted *supra*, the district court held that "an allegation of racial discrimination is needed for a claim under section 5 [of the Voting Rights] Act," *Barnett*, 753 F.Supp. at 953, and that plaintiffs' failure to allege such discrimination amounted to a jurisdictional defect. *Id.* at 954.

Appellants contest the district court's interpretation of section 5, arguing that it is inconsistent with the Supreme Court's decision in *Allen v. State Board of Elections, supra.* They claim that *Allen* merely requires a section 5 plaintiff to identify a change in voting practices or procedures subject to the provisions of the Act and therefore subject to Justice Department preclearance, and leaves to the United States District Court for the District of Columbia or the Justice Department the determination as to whether the new enactment has the purpose or effect of racial discrimination. Appellants further note that 42 U.S.C. § 1973c expressly states that any change in voting practices or procedures falling within the temporal and geographical parameters of the Act is subject to preclearance, and that therefore no allegation or proof of racial discrimination is necessary.

Appellees respond that the Supreme Court's decision in *N.A.A.C.P. v. Hampton County Election Commission*, 470 U.S. 166, 105 S.Ct. 1128, 84 L.Ed.2d 124 (1985), has modified the *Allen* standard to require a section 5 plaintiff to allege and prove that the challenged change in voting practices or procedures carries with it the potential for discrimination, and that the plaintiffs' failure to so allege in this case rendered their section 5 claim facially infirm. Appellees therefore urge affirmance of the district court's dismissal.[7]

#### ii. *Jurisdiction or the Merits?*

In *Bell v. Hood*, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946), the Supreme Court addressed the distinction between a jurisdictional ruling and a ruling on the merits:

> [j]urisdiction ... is not defeated ... by the possibility that the averments might

---

7. Without so stating, the appellees implicitly concede that the district court erred in holding that an allegation of *actual* discriminatory purpose or effect is required for success in a section 5 action, insofar as appellees contend that an allegation of *potential* discriminatory purpose or effect is required under *Hampton County.* Nevertheless, because the appellants in this case did not allege in their complaint that the Hart County voting practices or procedures carried with them any potential for discrimination, we construe the appellees' argument to be that the court's interpretation of section 5's requirements constituted harmless error, and that affirmance of the court's dismissal is required under *Hampton County.* This court may, of course, affirm the district court where the judgment entered is correct on any legal ground regardless of the grounds addressed, adopted or rejected by the district court. *Dandridge v. Williams*, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970); *Greenwood Utilities Commission v. Hodel*, 764 F.2d 1459 (11th Cir.1985).

fail to state a cause of action on which petitioner could actually recover. For it is well settled that the failure to state a proper cause of action on which relief can be granted is a question of law and just as issues of fact it must be decided after and not before the court has assumed jurisdiction over the controversy. If the court does later exercise its jurisdiction to determine that the allegations in the complaint do not state a ground for relief, then dismissal of the case would be on the merits, not for want of jurisdiction.

327 U.S. at 682, 66 S.Ct. at 776. The Court proceeded to explain that federal subject matter jurisdiction exists where "the right of the petitioners to recover under their complaint will be sustained if the Constitution and laws of the United States are given one construction and will be defeated if they are given another." *Id.* at 685, 66 S.Ct. at 777. The Court reiterated this position several years later in *Wheeldin v. Wheeler,* 373 U.S. 647, 649, 83 S.Ct. 1441, 1444, 10 L.Ed.2d 605 (1963). This court also faithfully has observed the distinction made in *Bell v. Hood. Delta Coal Program v. Libman,* 743 F.2d 852, 855 (11th Cir.1984) ("[A] plaintiff's suit may, of course, be subject to dismissal if the substantive statute on which he relies affords no right to relief to either him or those he represents. But that is properly an issue for determination on the merits."). *Marine Coatings of Alabama v. United States,* 792 F.2d 1565, 1567 (11th Cir.1986); *Dime Coal Co. v. Combs,* 796 F.2d 394, 396 (11th Cir.1986).

In essence this case involves a dispute over the proof requirements in a lawsuit brought under section 5. The district court based its dismissal of the case on its belief that section 5 plaintiffs must allege and prove racial animus or discrimination to compel submission of the proposed voting changes for Justice Department preclearance. Appellants oppose this interpretation, claiming that section 5 plaintiffs need only allege and prove that the relevant state or political subdivision enacted "any voting qualification or prerequisite to voting, or standard, practice or procedure with respect to voting different from that in force on November 1, 1964."

Given the Supreme Court's holdings in *Bell* and *Wheeldin,* as well as this court's own precedents, the district court's analysis on its face constitutes a ruling on the merits of the plaintiffs' claim. This claim "arises under the Constitution, laws, or treaties of the United States," and therefore appears to fulfill the requirements of the federal question jurisdiction statute, 28 U.S.C. § 1331, the alleged jurisdictional basis for plaintiffs' section 5 action.

One further inquiry need be made, however, before we can deem the district court's dismissal to constitute a ruling on the merits of plaintiffs' section 5 claim. In addition to articulating the general distinction between rulings on the merits and jurisdictional rulings, the *Bell* Court announced two exceptions to the rule that questions of law raised in a plaintiff's complaint require a decision on the merits rather than on the basis of jurisdiction: "... a suit may sometimes be dismissed for want of jurisdiction where the alleged claim under the Constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous." *Bell,* 327 U.S. at 682–83, 66 S.Ct. at 776.

In determining the substantiality of a federal claim under the latter *Bell* exception, this court must determine whether "the cause of action alleged is so patently without merit as to justify ... the court's dismissal for want of jurisdiction." *Id.* at 683, 66 S.Ct. at 776. *Accord, McGinnis v. Ingram Equipment Co., Inc.,* 918 F.2d 1491, 1494 (11th Cir.1990) (en banc); *Dime Coal Co. v. Combs,* 796 F.2d at 396. A federal claim will be deemed without any legal merit if the claim "has no plausible foundation, or [if] the court concludes that a prior Supreme Court decision clearly forecloses the claim." *Olivares v. Martin,* 555 F.2d 1192, 1195 (5th Cir.1977). *See also Oneida Indian Nation v. County of Oneida,* 414 U.S. 661, 666–67, 94 S.Ct. 772, 777, 39 L.Ed.2d 73 (1974); *Dime Coal Co. v. Combs,* 796 F.2d at 396; *Appling City v.*

*Municipal Electric Authority of Georgia,* 621 F.2d 1301, 1305–06 (5th Cir.), *cert. denied,* 449 U.S. 1015, 101 S.Ct. 574, 66 L.Ed.2d 474 (1980). It is the latter question—i.e., whether Supreme Court precedent clearly forecloses appellants' claim—which we must now address.[8]

In essence, because of the rather unusual course taken by this case, the question of whether Supreme Court precedent clearly forecloses plaintiff's claim becomes tantamount to the question of whether such precedent provided the basis for dismissal of plaintiff's complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. As discussed *supra,* the district court granted the TRO sought by appellants on July 29, 1988, the same day appellants filed their complaint alleging the defendants' non-compliance with the preclearance requirements of section 5. After the district court extended the TRO on August 8, 1988, defendants filed their respective responsive pleadings in late August 1988; certain defendants moved to dismiss plaintiffs' claim on jurisdictional and/or substantive grounds. On

September 1, 1988, a three-judge district court was designated to hear plaintiffs' claim for a preliminary injunction. On October 17, the court dismissed the case, as well as all of the defense's outstanding motions, as moot. Thus, the litigation of this case did not extend beyond the filing of each party's initial pleadings and the district court's granting and extension of a temporary restraining order. The question, therefore, becomes whether dismissal of the case at this stage of the proceedings was warranted because of plaintiffs' failure to allege either actual or potential racial animus in their complaint.

Appellees contend that the Supreme Court's decision in *Hampton County Board of Elections, supra,* unequivocally requires a section 5 plaintiff to allege and prove that the challenged change in voting practices or procedures carries with it the potential for discrimination, and that plaintiffs' failure to make the necessary allegations forecloses their claim.

Regardless of whether the appellees' contentions are correct as a matter of law,[9] prior Supreme Court precedent did not

**8.** That a court need determine whether Supreme Court precedent forecloses a plaintiff's claim on the merits in order to determine whether a federal court had jurisdiction over the claim in the first place seems completely inconsistent with the basic premise of *Bell v. Hood* and its progeny. However, both the Supreme Court's and this court's jurisprudence mandate that we conduct such an inquiry.

**9.** Indeed, it is questionable whether Supreme Court precedent unequivocally holds that a plaintiff must prove potential for discrimination to prevail on a section 5 claim. Despite the Court's statements to the effect that proof of potential for discrimination is required in a section 5 action, the Court has also noted the broad sweep of the Act, *Dougherty County, Georgia, Board of Education v. White,* 439 U.S. 32, 38, 99 S.Ct. 368, 372, 58 L.Ed.2d 269 (1978), and consistently has invoked its own call to interpret section 5 as covering " 'any state enactment which altered the election law of a covered state in even a minor way.' " *Georgia v. United States,* 411 U.S. 526, 532, 93 S.Ct. 1702, 1706, 36 L.Ed.2d 472 (1973), quoting *Allen,* 393 U.S. at 566, 89 S.Ct. at 832. *See also Dougherty,* 439 U.S. at 37–38, 99 S.Ct. at 372; *Hampton County,* 470 U.S. at 175–76, 105 S.Ct. at 1134; *McDaniel v. Sanchez,* 452 U.S. 130, 137, 101 S.Ct. 2224, 2230, 68 L.Ed.2d 724 (1981); *Clark v. Roemer,* — U.S. —, 111 S.Ct. 2096, 2101, 114 L.Ed.2d 691 (1991).

Further, the Court has invoked both the original legislative history of section 5, as well as the Congressional debates at the time of the Act's reenactment, for the proposition that section 5 " 'requires review of *all* voting changes prior to implementation by the covered jurisdictions.' " *Dougherty,* 439 U.S. at 39, 99 S.Ct. at 372, *quoting* S.Rep. No. 94–295, p. 15 (1975); H.R.Rep. No. 94–196, p. 8 (1975), U.S.Code Cong. & Admin.News 1975, pp. 774, 781 (emphasis added in Court's opinion). *See also Hampton County,* 470 U.S. at 176, 105 S.Ct. at 1134. Finally, the Court repeatedly has held that "[g]iven the central role of the Attorney General in formulating and implementing § 5, [the Justice Department's] interpretation of its scope is entitled to particular deference." *Dougherty,* 439 U.S. at 39, 99 S.Ct. at 373; *Hampton County,* 470 U.S. at 178–79, 105 S.Ct. at 1135; *United States v. Board of Commissioners of Sheffield, Alabama,* 435 U.S. 110, 131, 98 S.Ct. 965, 979, 55 L.Ed.2d 148 (1978). The Attorney General's regulations, in force since 1971 and found at 28 C.F.R. § 51 *et seq.* (1991), state unequivocally that *"[a]ny* change affecting voting, even though it appears minor or indirect, returns to a prior practice or procedure, ostensibly expands voting rights, or is designed to remove the elements that caused objection by the Attorney General to a prior submitted change, must meet the section 5 preclearance requirement." 28 C.F.R. § 51.12 (emphasis added).

mandate dismissal of plaintiffs' case for failure to state a claim, given the Court's oft-cited opinion in *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In that case, the Court held that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief," 355 U.S. at 45–46, 78 S.Ct. at 101–02, thereby emphasizing the limited application of 12(b)(6) dismissals. *See also United States v. Hougham*, 364 U.S. 310, 316–317, 81 S.Ct. 13, 18, 5 L.Ed.2d 8 (1960).

It cannot be disputed that the changes in voting procedures identified by the plaintiffs satisfied the threshold requirements of a section 5 action. The alterations in voting practice and procedure at issue in this case undoubtedly constituted "voting qualification[s] or prerequisite[s] to voting, or standard[s], practice[s] or procedure[s] with respect to voting...." Plaintiffs in this case challenged (1) Hart County's 1988 shift from a county-wide electoral system to a district-based system and (2) the Hart County Democratic Executive Committee's institution of barriers to candidate qualification under the 1959 system of government during the 1988 candidate qualification process. As to Hart County's shift from at-large voting to district-based voting, the Attorney General's regulations specifically identify such an alteration as covered by section 5. 28 C.F.R. § 51.13(e). As to the Hart County Democratic Executive Committee's limitation on candidate qualifications, the Attorney General's regulations specifically list as an example of changes affecting voting "[a]ny change affecting the eligibility of persons to become or remain candidates, to obtain a position on the ballot in primary or general elections or to become or remain holders of elective offices." 28 C.F.R. § 51.13(g). The fact that the Democratic Executive Committee, rather than the state or one of its political subdivisions, was responsible

for candidate qualification does not remove that change from coverage under section 5. 28 C.F.R. § 51.7 (activities by political parties with respect to conduct of primary elections are subject to preclearance requirement).

Nor can it be said that plaintiffs could have alleged no facts in support of their claims that would entitle them to relief. The Supreme Court has held that a switch from at large voting to district voting may have discriminatory effects. *See Allen*, 393 U.S. at 569, 89 S.Ct. at 833–34. Similarly, in *Hadnott v. Amos*, 394 U.S. 358, 89 S.Ct. 1101, 22 L.Ed.2d 336 (1969), the Court held that an Alabama statute requiring independent candidates to declare their intention to seek office two months earlier than under prior procedures imposed "increased barriers" on candidacy and therefore warranted section 5 scrutiny. The limitations placed on candidate qualification in Hart County could certainly be said to have imposed the same barriers.

■ Under circumstances where, as here, a complaint may not have contained sufficient information to allow a responsive pleading to be framed, "a district court should give a plaintiff an opportunity to amend his complaint rather than dismiss it when it appears that a more carefully drafted complaint might state a claim upon which relief could be granted." *Friedlander v. Nims*, 755 F.2d 810, 813 (11th Cir. 1985), *citing Conley v. Gibson, supra. See also Sisk v. Texas Parks And Wildlife Department*, 644 F.2d 1056, 1059 (5th Cir. 1981) ("[i]f a complaint is ambiguous or does not contain sufficient information to allow a responsive pleading to be framed, the proper remedy is a motion for a more definite statement under Rule 12(e) F.R.C.P. ..."). Thus, even assuming that plaintiffs in this case were unequivocally required under *Hampton County* to allege or explain the potential for discrimination raised by the proposed voting changes, their failure to do so did not warrant dismissal of their case under Fed.R.Civ.P.

We do not, however, in this case reach the issue of whether Supreme Court precedent clearly requires allegation of potential discriminatory effect. Rather, we hold that dismissal of plaintiffs' section 5 suit on the basis of a failure

to so allege would nonetheless be improper under the Federal Rules of Civil Procedure and the Supreme Court's holding in *Conley v. Gibson. See infra*, at 1042–44.

12(b)(6). Given the standard for dismissal announced in *Conley v. Gibson,* the absence of allegations of potential discrimination in plaintiffs' complaint did not foreclose the possibility that they would prevail on their section 5 claim.

Accordingly, we hold that appellants' success on their section 5 action was not foreclosed by prior Supreme Court decisions; that consequently, the district court's dismissal of the case constituted a decision on the merits; and that such revisitation of the merits of an otherwise moot case, leading to dismissal, was error.

### iii. *Application of Section 5 to "Candidate Defendants"*

■ While the court's dismissal of plaintiffs' motion was error, it was harmless error as to defendants-appellees Herndon, Lewis, Seymour, Fleming, Oliver, Greenway, Szabo, Teasley, Shirley and Dudley. These individuals were named as defendants by virtue of the fact that they, unlike appellant Barnett, were permitted to qualify for positions under the 1959 and 1988 systems of government, and therefore were not subjected to the limitations on candidate qualification that the Hart County Democratic Executive Committee imposed on other prospective candidates.

In *United States v. Board of Commissioners of Sheffield, Alabama, supra,* the Supreme Court held that section 5 applies to "those political units that may exercise control over critical aspects of the voting process." 435 U.S. at 127, 98 S.Ct. at 977. Plaintiffs have never suggested that any of the individuals not subjected to the candidate qualification limitations imposed by the County Democratic Executive Committee exercised any control over the decision to limit qualification under the 1959 system to those who had qualified under the 1988 system. Thus, while appellees Bailey, in her official capacity as Hart County Superintendent of Elections, and McCurley, in his official capacity as Chairman of the Hart

County Democratic Executive Committee, are indisputably subject to the requirements of section 5, the other appellees in this case are not subject to those requirements. They were in no position to ensure compliance with the statute or to exercise control over the voting procedures in Hart County. Their inclusion in this lawsuit is contrary to the most basic understanding of the Voting Rights Act, which was enacted to prevent those responsible for implementing changes in voting practices and procedures from denying or abridging the right to vote on account of race. 42 U.S.C. § 1973. The language of the Voting Rights Act itself and the Supreme Court's decision in *Sheffield* clearly foreclose appellants' success on the merits of its section 5 claim vis-a-vis appellees Herndon, Lewis, Seymour, Fleming, Oliver, Greenway, Szabo, Teasley, Shirley and Dudley; accordingly, we affirm the district court's dismissal of plaintiffs' motion for attorneys' fees as it applies to those appellees.[10]

### III. *Conclusion*

We AFFIRM the district court's dismissal of plaintiffs' motion for attorney's fees as it applies to appellees Thomas Herndon, Ray Lewis, James Oliver, Leonard Seymour, Terrell Fleming, Donnie Greenway, Frank Szabo, W. Grover Dudley, Joel Shirley and Bruce Teasley. We REVERSE the district court's dismissal of plaintiffs' motion as it applies to appellees Geraldine Bailey, in her official capacity as Hart County Superintendent of Elections, and John McCurley, in his official capacity as Chairman of the Hart County Democratic Executive Committee, and REMAND the case with instructions to hold an evidentiary hearing on plaintiffs' entitlement to attorney's fees from those appellees under 42 U.S.C. § 1988.

---

**10.** Although this issue was not raised below, this court may, as noted *supra* at note 7, affirm the district court where the judgment entered is correct on any legal ground regardless of the grounds addressed, adopted or rejected by the district court.

Furthermore, because we affirm the dismissal of plaintiffs' motion for attorney's fees as to these appellees on the basis of *Sheffield,* we need not decide the argument of these same appellees that they are not liable for attorney's fees on first amendment grounds.