[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-14249
Non-Argument Calendar
_____

D.C. Docket No. 0:12-cv-62197-WJZ


ALLEN LICHT,

                                        Plaintiff-Counter Defendant-Appellant,

versus

AJENE WATSON,
JAMES GIBBS, et al.,

                                        Defendants-Appellees,

ERIC L. NOVESHEN,

                                        Defendant-Third Party Plaintiff-
                                        Counter Claimant-Appellee,

STEVEN KOIFMAN, et al.,

                                        Defendants,

ELLA FRANKEL, et al.,

                                        Third Party Defendants-
                                        Counter Defendants.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(May 22, 2014)

Before PRYOR, MARTIN, and FAY, Circuit Judges.

PER CURIAM:

Allen Licht, proceeding pro se, appeals the district court's dismissal of his complaint. Licht now argues that the district court erred by: (1) dismissing his claims brought under the Securities Act of 1933, the Securities Exchange Act, and the Securities Exchange Commission's (SEC) Rule 10b-5; (2) dismissing his claims brought under the Racketeer Influenced and Corrupt Organizations Act (RICO); (3) refusing to grant leave to amend; and (4) dismissing his claims against defendants who did not file motions to dismiss. After careful review, we affirm.

## I.    BACKGROUND

Licht is the Managing Director and Chief Operations Officer of Simulated Environment Concepts, Inc. (Simulated). Between 2008 and 2011, Licht alleges that 14 individual and 9 entity defendants orchestrated a "pump-and-dump" scheme using Simulated stock. According to Licht, the defendants executed this scheme by fraudulently inducing Simulated to issue large quantities of heavily discounted stock to the defendants. The defendants then began a public relations

2

campaign to "pump" up the value of Simulated's stock, only to "dump" their shares soon afterwards by unexpectedly selling off their stock en masse. Although the defendants handsomely profited from the scheme, Licht alleges that the massive sell-off caused prices of Simulated stock to plummet, thereby harming shareholders like Licht and ruining Licht and Simulated's reputation in the business community.

On January 30, 2013, Licht filed an amended complaint in district court, alleging that the defendants had violated the Securities Act of 1933, the Securities Exchange Act, SEC Rule 10b-5, RICO, and various state laws. The district court dismissed Licht's claims under the Securities Act of 1933, the Securities Exchange Act, and SEC Rule 10b-5 for lack of subject matter jurisdiction. The district court also dismissed Licht's RICO claims as barred by the Private Securities Litigation Reform Act (PSLRA). After dismissing Licht's federal law claims with prejudice, the district court also declined to exercise supplemental jurisdiction over his state law claims. Licht now appeals.

## II.    DISCUSSION

We review <u>de novo</u> a district court's order granting a motion to dismiss for lack of subject matter jurisdiction, viewing the facts in the light most favorable to the plaintiff. <u>Parise v. Delta Airlines, Inc.</u>, 141 F.3d 1463, 1465 (11th Cir. 1998); <u>see also</u> <u>Fin. Sec. Assurance, Inc. v. Stephens, Inc.</u>, 500 F.3d 1276, 1282–83 (11th

Cir. 2007) (reviewing de novo the dismissal of a Section 10(b) complaint for failure to state a claim, and affirming in part because plaintiffs failed to allege that they were buyers or sellers and thus lacked standing).  We also review de novo the district court's dismissal for failure to state a civil RICO claim.  See Ambrosia Coal & Constr. Co. v. Pages Morales, 482 F.3d 1309, 1316 (11th Cir. 2007).  We generally review the denial of a motion to amend a complaint for an abuse of discretion but we review questions of law, such as whether amendment would be futile, de novo.  Cockrell v. Sparks, 510 F.3d 1307, 1310 (11th Cir. 2007).

We liberally construe pro se pleadings, but require them to conform to procedural rules.  Albra v. Advan, Inc., 490 F.3d 826, 829 (11th Cir. 2007).  Arguments that were not presented in the district court are deemed waived.  Access Now, Inc. v. Sw. Airlines Co., 385 F.3d 1324, 1330–33 (11th Cir. 2004).

A. Securities Exchange Act and Securities Act Claims

We first consider whether the district court properly dismissed Licht's claims under Section 10(b) of the Securities Exchange Act, SEC Rule 10b-5, and Section 12 of the Securities Act.  The district court dismissed the claims for lack of subject matter jurisdiction because Licht failed to allege that he was a buyer or seller of Simulated securities in connection with the defendants' actions.  Licht responds that he nevertheless has standing to pursue these claims because he is an officer of Simulated and a lawful owner of Simulated stock.  He also argues that

4

the buyer-seller requirement does not preclude relief if a plaintiff can establish a causal connection between the violations of law and his loss.

Licht's arguments ultimately miss the mark because they conflict with the longstanding rule that only purchasers and sellers of securities can invoke the subject matter jurisdiction of the courts under Section 10(b) of the Securities Exchange Act, SEC Rule 10b-5, and Section 12 of the Securities Act.  See Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 749, 95 S. Ct. 1917, 1932 (1975); Delta Coal Program v. Libman, 743 F.2d 852, 855 (11th Cir. 1984) ("[B]ecause an element essential to a violation of section 10(b) or rule 10b-5 is a sale or purchase, plaintiffs who have been unable to characterize their key transactions with the defendants as such have failed to invoke subject matter jurisdiction for those claims.").  In Blue Chip Stamps, for example, the Supreme Court observed that Section 10(b) of the Securities Exchange Act prohibits certain "manipulative or deceptive" conduct "in connection with the purchase or sale of any security."  421 U.S. at 728, 95 S. Ct. at 1922.  As a result, the Court endorsed the standing rule created by Birnbaum v. Newport Steel Corp., 193 F.2d 461, 464 (2d Cir. 1952), which permits only purchasers and sellers of securities, and those with contracts to purchase and sell securities, to bring suit under Section 10(b) of the Securities Exchange Act and SEC Rule 10b-5, which implements Section 10(b).  421 U.S. at 730–31, 749, 95 S. Ct. at 1923, 1932.  The Court adopted this

rule even though it would exclude three principal categories of plaintiffs from bringing claims: (1) people who did not purchase stock as a result of the defendants' conduct; (2) people who did not sell stock as a result of the defendants' conduct; and (3) "shareholders, creditors, and perhaps others related to an issuer who suffered loss in the value of their investment." 421 U.S. at 737–38, 95 S. Ct. at 1926.

In the same way, Section 12 of the Securities Act imposes civil liability on any person who "offers or sells a security" by means of a misleading prospectus or oral communication. 15 U.S.C. § 77*l*(a). The seller's civil liability, however, is limited "to the person purchasing such security from him." Id. Thus, a person only has standing to sue under Section 12 if he purchased securities from the defendant. Id.; see also Wolf v. Frank, 477 F.2d 467, 479 (5th Cir. 1973) [1] ("Section 12, in terms, provides a remedy for violations of Section 5 only to purchasers of securities . . . or to one who stands in the shoes of a purchaser.") (internal citations omitted); Freidus v. Barclays Bank PLC, 734 F.3d 132, 141 (2d Cir. 2013) ("In order to have standing under § 12(a)(2), however, plaintiffs must have purchased securities directly from the defendants.").

Given these well-established standing requirements, the district court properly concluded that Licht lacked standing to bring his claims under the

---

[1] In Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

Securities Exchange Act, SEC Rule 10b-5, and the Securities Act. It may be true that the defendants harmed Licht in his capacity as an officer of Simulated and an owner of Simulated stock. But he nevertheless cannot invoke the subject matter jurisdiction of the courts under these statutes unless he alleges that he was a purchaser or seller of stock in connection with the defendants' fraudulent conduct. See Blue Chip Stamps, 421 U.S. at 737–38, 95 S .Ct. at 1926 (noting that "shareholders, creditors, and perhaps others related to an issuer who suffered loss in the value of their investment" do not have standing under the Securities Exchange Act and SEC Rule 10b-5).

Neither does it make a difference that Licht can establish a direct causal connection between his losses and the defendants' actions. In Financial Security Assurance, we rejected the argument that the purchaser-seller requirement "entail[s] a functional, and not a formal, inquiry." 500 F.3d at 1283. If it were otherwise, the standing rules would be "subject to endless case-by-case erosion by courts employing a functional analysis." Id. (quotation marks omitted). Thus, Licht cannot invoke the court's subject matter jurisdiction simply because the harm he suffered was functionally equivalent to the harm suffered by purchasers or sellers of securities. In order to have standing to bring these claims, Licht must formally allege that he purchased or sold securities in connection with the defendants' actions.

Licht responds that these standing rules must yield to the "forced seller doctrine." He mistakenly claims that this doctrine allows investors to sue as long as the nature of their interest in a security was fundamentally changed as a result of a fraudulent scheme. We need not consider this argument because Licht raises it for the first time on appeal. See Access Now, 385 F.3d at 1330–33. In any event, the forced seller doctrine is not as broad as Licht suggests. The "forced seller doctrine" refers to a shareholder plaintiff who, due to a merger, "as a practical matter" must "eventually become a party to a 'sale.'" Dudley v. Se. Factor & Fin. Corp., 446 F.2d 303, 306–07 (5th Cir. 1971). We treat shareholders as forced sellers in these post-merger situations because "the nature of [the shareholder's] investment has been fundamentally changed from an interest in a going enterprise into a right solely to a payment of money for his shares." Id. at 307. Licht cannot benefit from this doctrine because he has not alleged any merger, nor has he alleged that he is being forced to sell his Simulated stock as a result of any merger. Therefore, the "forced seller doctrine" is irrelevant here.

## B. RICO CLAIMS

We next consider the district court's finding that Licht's RICO claims are barred by the Private Securities Litigation Reform Act (PSLRA). Licht argues that the district court mistakenly viewed his RICO claims as predicated on acts of securities fraud instead of a complex scheme based on a variety of different acts,

8

circumstances, and fraud.  Licht also argues that his RICO claims do not rely on securities fraud but rather the defendants' inflated marketing campaigns, press releases, interviews, false valuations, and activity reports.  As a result, Licht argues that the PSLRA does not bar his RICO claims.

The PSLRA provides that "no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation" of RICO, unless the person who committed the fraud has been criminally convicted.  18 U.S.C. § 1964(c).  As a result, courts have applied the RICO bar in § 1964(c) broadly, regardless of whether the plaintiff explicitly relied upon securities fraud as a predicate act or even had standing to pursue a securities fraud claim.  See, e.g., Bald Eagle Area School Dist. v. Keystone Fin., Inc., 189 F.3d 321, 331 (3d Cir. 1999) ("[A] plaintiff cannot avoid the RICO Amendment's bar by pleading mail fraud, wire fraud and bank fraud as predicate offenses in a civil RICO action if the conduct giving rise to those predicate offenses amounts to securities fraud."); MLSMK Inv. Co. v. JP Morgan Chase & Co., 651 F.3d 268, 277 (2d Cir. 2011) (holding that the PSLRA bar applies "even where a plaintiff cannot itself pursue a securities fraud action against the defendant"); Howard v. Am. Online Inc., 208 F.3d 741, 749 (9th Cir. 2000) (holding that the RICO bar applies even where the plaintiff does not have standing to sue under securities laws because the plaintiff did not buy or sell securities).

With these principles in mind, the district court properly dismissed Licht's RICO claims because they are based on predicate acts of securities fraud. Licht's RICO claims allege that the defendants "engaged in 'racketeering activity' by actively participating, among others, in the activity of 'fraud in the sale of securities.'" Although Licht alleges that the defendants also engaged in wire fraud and mail fraud, this conduct was in furtherance of the defendants' overarching scheme to commit securities fraud. See United States v. Stanley, 739 F.3d 633 (11th Cir. 2014) (affirming conviction for violation of securities laws where defendants engaged in a similar pump-and-dump scheme); SEC v. Diversified Corp. Consulting Grp., 378 F.3d 1219 (11th Cir. 2004) (affirming judgment in favor of the SEC in a civil enforcement action for violation of securities fraud laws where defendants engaged in a similar pump-and-dump scheme). As a result, the district court properly dismissed Licht's RICO claims because they rely on predicate acts barred by the PLSRA.

## C. LEAVE TO AMEND

Licht next argues that the district court erred by dismissing his complaint without giving him an opportunity to amend. He emphasizes that his pleadings must be liberally construed because he is a pro se litigant. He further contends that he can still allege a set of facts that would entitle him to relief.

10

Federal Rule of Civil Procedure 15(a)(1) states that "[a] party may amend the party's pleading once as a matter of course" within 21 days after serving it, or after the earlier of service of any responsive pleading or service of a Rule 12(b) motion.  In all other cases, however, a party may amend its pleading only by leave of the court or by written consent of the adverse party.  Fed. R. Civ. P. 15(a)(1), (a)(2).  The district court "should freely give leave when justice so requires."  Id. 15(a)(2).  However, where a more carefully drafted complaint could not state a claim and amendment would be futile, dismissal with prejudice is proper.  See Cockrell, 510 F.3d at 1310.

We agree with the district court that it was appropriate to dismiss Licht's claims with prejudice.  As we have said, the district court correctly dismissed Licht's claims under the Securities Act and the Securities Exchange Act because he failed to allege that he was a purchaser or seller of securities.  See supra, Section II.A.  Before the district court dismissed these claims, Licht never sought leave to amend his pleadings to cure this defect.  Even now, Licht does not argue that he was a purchaser or seller of securities in connection with the defendants' conduct.  Instead, Licht argues for a more expansive legal standard that would confer standing upon him as an officer of Simulated and a shareholder of Simulated stock who was harmed by the defendants' conduct.  Based on this

record, we cannot say that the district court abused its discretion in denying leave to amend Licht's claims under the Securities Act and the Securities Exchange Act.

In the same way, the district court properly found that amendment of Licht's RICO claims would be futile because the heart of his complaint is a pump-and-dump scheme that is "actionable as fraud in the purchase or sale of securities," 18 U.S.C. § 1964(c).  See supra, Section II.B.  Because the PSLRA bars this type of securities fraud from serving as a predicate act for RICO, the district court correctly found that amendment would be futile.  Additionally, Licht did not file any motion with the district court suggesting he would be able to allege any RICO predicate acts that would not be barred by the PSLRA.  See Long v. Satz, 181 F.3d 1275, 1279 (11th Cir. 1999) (per curiam) ("A motion for leave to amend should either set forth the substance of the proposed amendment or attach a copy of the proposed amendment.").  As a result, we conclude that the district court did not abuse its discretion in denying Licht's RICO claims without granting leave to amend.

## D. DISMISSAL AS AGAINST ALL DEFENDANTS

Finally, Licht argues that the district court erred in dismissing claims against defendants who did not file motions to dismiss.  As discussed above, however, Licht's failure to allege that he was a purchaser or seller of securities meant that he could not invoke the court's subject matter jurisdiction under the Securities Act

12

and the Securities Exchange Act. Once the district court found that it lacked jurisdiction over these claims, it was required to dismiss them regardless of which defendants had filed motions to dismiss. See Univ. of S. Ala. v. Am. Tobacco Co., 168 F.3d 405, 410 (11th Cir. 1999) ("Simply put, once a federal court determines that it is without subject matter jurisdiction, the court is powerless to continue.").

As for Licht's RICO claims, the district court's actions constituted a dismissal of the non-movant defendants on its own motion for failure to state a claim. "A district court can only dismiss an action on its own motion as long as the procedure employed is fair." Tazoe v. Airbus S.A.S., 631 F.3d 1321, 1336 (11th Cir. 2011) (quotation marks omitted). To employ fair procedure, a district court must generally "provide the plaintiff with notice of its intent to dismiss or an opportunity to respond." Am. United Life Ins. Co. v. Martinez, 480 F.3d 1043, 1057 (11th Cir. 2007) (citing Jefferson Fourteenth Assocs. v. Wometco de P.R., Inc., 695 F.2d 524, 527 (11th Cir. 1983). In this case, the district court employed a fair procedure because Licht had a full and fair opportunity to argue that his RICO claims were not barred by the PSLRA. Indeed, Licht pressed this argument in his response to the defendants' motions to dismiss. Therefore, it was not error in these

13

circumstances for the district court to dismiss Licht's RICO claims against all the non-movant defendants. [2]

### III.    CONCLUSION

For these reasons, we affirm.

**AFFIRMED.**

---

[2] To the extent that Licht challenges the district court's dismissal of his state law claims, the argument is unavailing.  A district court has discretion not to exercise supplemental jurisdiction over state law claims after it has dismissed all claims over which it had original jurisdiction. Parker v. Scrap Metal Processors, Inc., 468 F.3d 733, 743 (11th Cir. 2006).